[No. H030494. Sixth Dist. Mar. 3, 2009.]

K.C. MULTIMEDIA, INC., Plaintiff and Appellant, v.
BANK OF AMERICA TECHNOLOGY & OPERATIONS, INC., et al.,
Defendants and Respondents.

COUNSEL

Law Offices of Richard L. Antognini, Richard L. Antognini; Downey Brand and Michael J. Thomas for Plaintiff and Appellant.

Law Offices of Allen Ruby and Allen Ruby for Defendants and Respondents.

## Opinion

**McADAMS, J.**—After a lengthy trial on appellant's civil claims for trade secret theft, the jury found for respondents. Appellant attacks the special verdicts, arguing that the jury erred as a matter of law in interpreting two contracts. Appellant also challenges the pretrial dismissal of three of its causes of action, which the trial court found statutorily preempted.

We shall affirm the judgment for respondents. In the unpublished portion of the opinion, we reject appellant's attack on the special verdicts, concluding that they are supported by the evidence and by the law. In the published portion of the opinion, we address and reject appellant's procedural and substantive challenges to the trial court's pretrial preemption ruling.

## BACKGROUND

The parties to this appeal are plaintiff and appellant K.C. Multimedia, Inc. (KCM), and defendants and respondents Bank of America Technology & Operations, Inc. (BATO), Bank of America National Association (BANA), and Bank of America Corporation (BA). This litigation arose out of a business relationship in which appellant supplied technology services to respondents or related entities, including BA's predecessor, Bank of America National Savings & Trust Association (NTSA).

### *The Contracts*

The parties entered into two written contracts, one in 1998 and another in 2000. Contract documentation included appendices and work orders.

### *The Technology*

Appellant developed prototypes for two banking applications: "Palm VII," which allowed bank customers to use a handheld wireless device to access their account information; and "Gating," which simplified customers' access to online banking services following a merger between Nations Bank and BA's predecessor, by allowing a "single sign-on" or "SSO." The software for both applications was derived from preexisting technology known as "Wirelessproxy," which had to be customized for respondents. Appellant claimed the two applications derived from Wirelessproxy source code "core technology" as a trade secret.[1]

---

[1] As described by appellant's counsel in closing argument: "The core technology was . . . in development for a number of years. And this core technology had many modules within it. The Palm VII used some of these modules in the wireless banking application. [¶] The Gating server application used some of the modules in that application. And among those that were

*Pleadings; Pretrial Proceedings*

This action was filed in June 2001. The sole named defendant in the original complaint was BATO, but allegations also were asserted against appellant's former employee, Allen Tam. The complaint asserted causes of action for (1) misappropriation of trade secrets; (2) conversion; (3) breach of contract; and (4) unjust enrichment. The complaint alleged that BATO misappropriated the technology used in the two banking applications. As characterized in appellant's trial brief, Tam "took the trade secrets to the Bank in exchange for its promise of employment." In its answer, BATO disputed those allegations.

The litigation generated an extensive pretrial procedural history, including multiple demurrers and complaint amendments, as well as several unsuccessful motions for summary adjudication or summary judgment.

By the time the case went to trial in February 2006, the operative pleading was appellant's fifth amended complaint. The named defendants were respondents BATO, BA, and BANA, plus appellant's former employee Allen Tam. The causes of action asserted in this pleading were (1) trade secret misappropriation; (2) breach of confidence; (3) conversion; (4) breach of contract; (5) tortious interference with contract; and (6) unfair competition. The conversion claim involved a laptop computer; it was asserted against Tam alone. The other five causes of action were asserted against all defendants. Appellant's claims against Tam were stayed prior to trial because of his bankruptcy.

In February 2006, just prior to trial, the court heard a number of in limine motions. Immediately thereafter, the court took up an issue raised in respondents' trial brief, statutory preemption. After entertaining written and oral argument on the issue, the court dismissed three causes of action of appellant's fifth amended complaint on the ground that they were preempted by California's Uniform Trade Secrets Act. (Civ. Code, § 3426 et seq.) This ruling eliminated appellant's second cause of action (for breach of confidence), its fifth cause of action (for interference with contract), and its sixth cause of action (for unfair competition). Appellant confirmed that it would dismiss its fourth cause of action for breach of contract, if it had not done so already. Thus, by the time of trial, appellant's sole remaining cause of action against respondents was its first cause of action, for trade secret misappropriation.

---

used and selected for each there was some overlap." Prior to trial, appellant stated that it sought "relief for the Banks' theft of 'Wirelessproxy source code' "—which it defined as "code derived from the source code of Wirelessproxy which pertains to a specific business application, such as wireless banking and Gating applications." In arguments to the jury, appellant referred to the two banking applications themselves as its trade secrets.

*Jury Trial*

The case was tried over the course of approximately eight weeks, from late February 2006 to late April 2006.

The trial was aptly described as "lengthy and complex" by respondents in their opposition to appellant's posttrial motion. As respondents further observed there: "More than 300 exhibits were received in evidence. Each side presented multiple experts. On some points, the evidence was sharply in conflict." As appellant observed in reply, "thousands of pages of testimony" were generated during trial. Respondents' witness list included more than three dozen names. Appellant's many witnesses included two of its principals, Sing Koo and Connie Chun, who each testified for several days.

Among the issues that appellant pressed at trial was its claim that Chun's signature on the 2000 contract had been forged. Both sides presented handwriting experts (forensic document examiners) to testify about this claim.

During trial, appellant sought leave to amend its complaint (1) to change "the identity of the contracting party to the December 1998 Agreement" from respondent BA to its predecessor NTSA, and (2) to reflect appellant's "position that the November 2000" agreement was "not valid." Over respondents' objection, the court allowed the amendment. The matter thus reached the jury on appellant's sixth amended complaint, which was filed April 11, 2006. That pleading asserted a single cause of action against respondents for misappropriation of trade secrets.

On April 24 and 25, 2006, the parties delivered lengthy closing arguments to the jury.

On April 26, 2006, the court instructed the jury and deliberations began.

*Verdict and Judgment*

On April 27, 2006, the day after it began deliberating, the jury returned special verdicts for respondents. As reflected in the special verdicts, the jury found that appellant failed to "prove that it is more likely than not that it is the owner of trade secrets contained in the Palm VII wireless banking application" or "in the Gating server application." The jury also found that appellant made its misappropriation claims in bad faith.

On May 9, 2006, the court entered judgment for respondents.

*Posttrial Proceedings*

Appellant moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. Respondents opposed the motion, and the court denied it in July 2006.

In August 2006, respondents moved for attorney fees. Appellant opposed the motion. The motion was heard and granted on September 29, 2006. On October 16, 2006, the court entered its formal order awarding respondents more than $1.1 million in fees and costs.

*Appeals*

On August 4, 2006, appellant filed this appeal from the judgment (H030494).

On December 18, 2006, appellant filed its companion appeal (*K.C. Multimedia, Inc. v. Bank of America Technology and Operations, Inc.* (Mar. 3, 2009, H031026) [nonpub. opn.]), which challenged the posttrial order awarding attorney fees.

We denied appellant's motion to consolidate the appeals, but on our own motion we decided to consider the two appeals together for purposes of briefing, oral argument, and decision. Our decision in the companion appeal appears in a separate unpublished opinion, filed concurrently with this one.

## CONTENTIONS

In this appeal, appellant presents a two-pronged attack on the judgment, targeting both the jury's verdict and the court's preemption ruling as contrary to law. Respondents dispute both points.

## DISCUSSION

We address appellant's attack on the special verdicts in the unpublished portion of the opinion, before turning to its arguments concerning the preemption ruling.

I. *The Verdict**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 939.

## II.  *The Preemption Ruling*

In its second line of attack on the judgment, appellant asserts error in the pretrial dismissal of three causes of action of its fifth amended complaint: the second cause of action, for breach of confidence; the fifth cause of action, for interference with contract; and the sixth cause of action, for unfair competition. As noted above, the trial court concluded that those three causes of action were preempted by California's Uniform Trade Secrets Act. (Civ. Code, § 3426 et seq.) Appellant challenges the preemption ruling on both procedural and substantive grounds.

### A.  *Appellant's Procedural Challenges*

The preemption issue was first raised below in respondents' trial brief. After motions in limine and before the jury was impaneled, the court addressed the question on its own motion, first giving appellant a chance to respond orally and in writing.

Appellant takes issue with the procedure employed, asserting two related claims of error. First, appellant challenges the pretrial procedure employed by the court as "improper." According to appellant: "If the trial court was using the motion in limine procedure to rule on the preemption procedure, it was in error. A motion in limine can only ask a court to admit or bar the admission of evidence." Second, appellant contends that the court ruled "prematurely," having acted without first hearing its evidence.

In response to appellant's procedural arguments, respondents assert forfeiture and lack of prejudice.

Addressing each of appellant's procedural claims in turn, we conclude (1) appellant forfeited its challenge to the propriety of the pretrial procedure by failing to object below, and (2) appellant failed to demonstrate that its related claim of prematurity constitutes prejudicial error.

### 1.  *The Objection Was Forfeited*

■  "In order to preserve an issue for appeal, a party ordinarily must raise the objection in the trial court." (*In re S.C.* (2006) 138 Cal.App.4th 396, 406 [41 Cal.Rptr.3d 453].) "The party also must cite to the record showing exactly where the objection was made." (*Ibid.*) As the California Supreme Court recently reaffirmed, "a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 [13 Cal.Rptr.3d 786,

90 P.3d 746].) "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*Ibid.*)

In its opening brief, appellant asserts that its trial counsel "objected to the ad hoc procedure. He pointed out that the court could reach the merits of an issue only through a demurrer or motion for summary judgment." Appellant offers no citation to the record to support that assertion, however, and our review of the record discloses no express objection. In its reply brief, appellant maintains that its "trial counsel did not agree to the procedure; he was forced into it." In support of that argument, appellant cites a portion of the transcript of the hearing held on Friday, February 24, 2006. But the cited excerpt reflects only this comment by counsel: "First, because this is akin to a motion to dismiss or a nonsuit or a motion for summary judgment, it's not properly briefed. We have not submitted any kind of a responsive brief. This did not come up in a motion in limine. It comes up as a sort of a musing in a trial brief." After hearing limited oral argument from appellant's counsel on the merits of the issue, the court offered him "an opportunity to brief." The court asked him to submit "something in writing" by the following Monday. Appellant's counsel voiced no objection to that proposal. As requested by the court, he submitted written opposition to the preemption arguments that had been advanced by respondents in their trial brief. Appellant's written submission asserts that "a finding of preemption at this stage of the case is premature." But it contains no objection to the hearing procedure itself. Nor did counsel orally interpose any such objection at the postbriefing hearing held on Tuesday, February 28, 2006.

In sum, this record demonstrates that appellant accepted the procedure without objection.

Appellant offers this further contention in its reply brief: "Even if [counsel] did acquiesce to the process, it was only because it was clear the trial court would overrule any objection to the procedure."

We reject that contention. "Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence." (*People v. Welch* (1993) 5 Cal.4th 228, 237 [19 Cal.Rptr.2d 520, 851 P.2d 802].) But this is not such a case. Having read the transcript of the two hearings, we cannot agree that an objection would have been futile.

Nor are we persuaded by appellant's claim that it "did not invite the error or somehow mislead the trial court into believing it accepted the court's decision." In making that claim, appellant relies on *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202 [285 Cal.Rptr. 99, 814 P.2d 1341]. That case

does not assist appellant. As the court said there: "Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error." (*Id.* at p. 212.) "But the doctrine does not apply when a party, *while making the appropriate objections*, acquiesces in a judicial determination." (*Ibid.*, italics added.) Here, as explained above, appellant did not interpose any objections. Appellant also relies on *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383 [87 Cal.Rptr.2d 453, 981 P.2d 79]. Plainly, however, that case is inapposite. *Norgart* involved the plaintiffs' pro forma consent to judgment to expedite an appeal, given with the understanding that they retained their right to be heard. (*Id.* at p. 402.) This case bears no procedural similarity to *Norgart*.

Ultimately, the question here is not whether appellant invited error, but whether it forfeited its claim by failing to object below. (See generally Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2008) ¶ 8:245, p. 8-161 [discussing invited error doctrine]; *id.*, ¶ 8:249, p. 8-164 [discussing waiver].) As explained above, because appellant failed to object, it forfeited its procedural challenge.

Finally, appellant argues against forfeiture on the ground that an "intervening change in the law" validated his argument. (See, e.g., *Palmer v. Shawback* (1993) 17 Cal.App.4th 296, 300 [21 Cal.Rptr.2d 575].) Appellant asserts that just such a change resulted from a recent decision of this court, *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582 [71 Cal.Rptr.3d 361]. We do not share appellant's view. In *Amtower*, this court criticized the increasingly frequent "use of in limine motions as substitutes for summary adjudication motions, motions for judgment on the pleadings, or other dispositive motions authorized by statute." (*Id.* at p. 1588.) This court published the *Amtower* opinion "to express our concerns surrounding the proliferation of such shortcut procedures." (*Ibid.*) There, this court observed: "The better practice in nearly every case is to afford the litigant the protections provided by trial or by the statutory processes." (*Ibid.*; see *id.* at pp. 1593–1595.) Nevertheless, this court continued, "although we would have preferred that the statute of limitations issue be decided by a proper summary adjudication motion or motion for nonsuit, the trial court's unorthodox procedure does not warrant reversal because plaintiff could not have prevailed under any circumstances." (*Id.* at p. 1588; see *id.* at pp. 1596–1597.) Given that holding, *Amtower* cannot be read as a blanket prohibition on the use of in limine proceedings to decide dispositive issues. Moreover, while it represents an important statement of this court's views, *Amtower* did not break new ground. (See, e.g., *R & B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140

Cal.App.4th 327, 333 [44 Cal.Rptr.3d 426] ["we caution against the whole-sale disposition of a case through rulings on motions in limine"].) Thus, contrary to appellant's assertion, *Amtower* does not constitute an intervening change in the law.

In sum, appellant's procedural challenge is forfeited. None of appellant's arguments persuades us to reach the merits of its claim that the trial court employed an "improper procedure" in ruling on the preemption question. In any event, as we next explain, the challenged procedure resulted in no reversible error.

### 2. *Any Error Was Harmless*

In its second (and related) procedural challenge, appellant asserts that the trial court's ruling on preemption was premature, since no evidence had been presented at that point. As noted above, in written opposition submitted to the trial court, appellant asserted that "a finding of preemption at this stage of the case is premature." Appellant then explained: "The parties dispute whether the confidential information constitutes trade secrets. Until such time as that issue has been determined, the issue of preemption will not be ripe for determination." Appellant renews that argument here.

Respondents disagree, asserting: "The trial court had all the necessary information, and it gave KCM full opportunity to brief and argue." In defense of the procedure used, respondents also cite the trial court's inherent authority. We start our analysis of this point there.

"A court has inherent equity, supervisory and administrative powers, as well as inherent power to control litigation and conserve judicial re-sources." (*Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 284 [54 Cal.Rptr.2d 655]; accord, *Amtower v. Photon Dynamics, Inc., supra*, 158 Cal.App.4th at p. 1595.) Use of a motion in limine to test whether a complaint states a cause of action "falls within these powers . . . ." (*Lucas v. County of Los Angeles*, at p. 285.)

"In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial." (*Amtower v. Photon Dynamics, Inc., supra*, 158 Cal.App.4th at p. 1593.) As case law recognizes, however, motions in limine also can function as "an objection to any and all evidence on the grounds [the] pleadings [are] fatally defective" for failure "to state a cause of action." (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 27 [61 Cal.Rptr.2d 518].) In such cases, the in limine motion "operate[s] as a general demurrer to [the] complaints or a motion for judgment on the pleadings." (*Ibid.*; see *Amtower v.*

*Photon Dynamics, Inc.*, at p. 1593.) "Alternatively," where such motions are granted "at the outset of trial with reference to evidence already produced in discovery, they may be viewed as the functional equivalent of an order sustaining a demurrer to the evidence, or nonsuit." (*Edwards v. Centex Real Estate Corp.*, at p. 27.) "A motion for nonsuit or demurrer to the evidence concedes the truth of the facts proved, but denies as a matter of law that they sustain the plaintiff's case." (*Id.* at pp. 27–28.)

On appeal from the trial court's determination that the allegations of a pleading do not support relief, review is de novo. (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 122 [61 Cal.Rptr.3d 221] [demurrer].) In such cases, "all inferences and conflicts in the evidence must be viewed most favorably to the nonmoving party." (*Amtower v. Photon Dynamics, Inc., supra,* 158 Cal.App.4th at p. 1595.) But "we cannot reverse the judgment of dismissal based on . . . alleged [procedural] error . . . unless we are convinced that that ruling resulted in a miscarriage of justice . . . ." (*People v. Edward D. Jones & Co.* (2007) 154 Cal.App.4th 627, 634 [65 Cal.Rptr.3d 130]; see Cal. Const., art. VI, § 13.)

In this case, appellant has not shown error, much less prejudice.

When the trial court made its ruling on February 28, 2006, it was armed with a great deal of information derived from the long history of the case, including appellant's prior pleadings and other submissions. As respondents told the court at the hearing that day: "The plaintiff has consistently and vehemently contended in prior pleadings in this court that the second and fifth causes of action arise from the same facts as the first cause of action. . . . So the argument about prematurity might have—certainly would have more force absent the representations" previously made by appellant. To support that assertion, respondents presented the court with appellant's opposition to respondents' demurrer to the fourth amended complaint. Respondents observed that the arguments raised by appellant there "were persuasive in fending off the demurrer on statute of limitations grounds." Respondents also presented the court with a copy of the May 2004 order overruling their demurrer. Respondents' counsel then stated: "So as to the notion that this is somehow premature, I think we have more than an ample record based on the express representations of the plaintiff that this is—these tort claims arise from the same operative facts; namely, misappropriation of trade secrets." Respondents also directed the court's attention to specific allegations in the fifth amended complaint, arguing that the gist of those allegations was trade secret misappropriation.

In making its ruling, the court said this: "As I consider this issue, I'm looking and considering the history of this case, as well." The court specifically mentioned appellant's trial brief, its fifth amended complaint, and "the

memorandum prepared in connection with the demurrer to the fourth amended complaint." The court continued: "So the conclusion I come to after considering everything, not just the documents presented to me today, but the arguments of counsel, everything I've heard is that causes of action 2, 5 and 6 are causes of action based on misappropriation of trade secrets. That is the gist of those causes of action. . . ."

Considering the extensive record before the court, we are not convinced that the court acted prematurely in disposing of appellant's tort claims in pretrial proceedings. To the contrary, it appears that the court acted within its inherent authority. (*Lucas v. County of Los Angeles, supra,* 47 Cal.App.4th at pp. 284–285.)

In any event, even assuming error, appellant has failed to demonstrate prejudice. "In other words, even if [appellant is] right in [its] assertion of procedural error, we cannot reverse the judgment unless [appellant is] also correct on the substantive issue of preemption." (*People v. Edward D. Jones & Co., supra,* 154 Cal.App.4th at p. 634 [discussing federal securities law preemption].) And as we explain next, the court properly decided the preemption issue presented in this case.

### B. *Appellant's Substantive Claim*

In addressing appellant's substantive challenge to the trial court's preemption ruling, we begin by describing the general principles that underpin the statutory preemption doctrine. We then apply those principles to the case before us.

#### 1. *Legal Principles*

##### a. *Statutory Preemption in General*

■ "The general rule is that statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject or, in other words, to 'occupy the field.' " (*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285 [216 Cal.Rptr. 438, 702 P.2d 596].) " '[G]eneral and comprehensive legislation, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter.' " (*Ibid.;* accord, *Pacific Scene, Inc. v. Peñasquitos, Inc.* (1988) 46 Cal.3d 407, 411 [250 Cal.Rptr. 651, 758 P.2d 1182].)

## b. California's Uniform Trade Secrets Act

■ California's Uniform Trade Secrets Act (CUTSA) is codified in sections 3426 through 3426.11 of the Civil Code.[5] (See generally *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 874 [4 Cal.Rptr.3d 69, 75 P.3d 1]; 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, §§ 86–92, pp. 382–390; *id.* (2008 supp.) §§ 86–92, pp. 54–56.) CUTSA has been characterized as having a "comprehensive structure and breadth . . . ." (*AccuImage Diagnostics Corp. v. Terarecon, Inc.* (N.D.Cal. 2003) 260 F.Supp.2d 941, 953.) "Here, the eleven provisions of the UTSA set forth: the definition of 'misappropriation' and 'trade secret,' injunctive relief for actual or threatened misappropriation, damages, attorney fees, methods for preserving the secrecy of trade secrets, the limitations period, the effect of the title on other statutes or remedies, statutory construction, severability, the application of title to acts occurring prior to the statutory date, and the application of official proceedings privilege to disclosure of trade secret information." (*Ibid.*) That breadth suggests a legislative intent to preempt the common law. (*Ibid.*; *I. E. Associates v. Safeco Title Ins. Co., supra,* 39 Cal.3d at p. 285.) At least as to common law trade secret misappropriation claims, "UTSA occupies the field in California." (*AccuImage Diagnostics Corp. v. Terarecon, Inc.,* at p. 954.)

■ CUTSA includes a specific provision concerning preemption. That provision, section 3426.7, reads in pertinent part as follows: "(a) Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets. [¶] (b) This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Section 3426.7 thus "expressly allows contractual and criminal remedies, whether or not based on trade secret misappropriation." (Trade Secrets Practice in Cal. (Cont.Ed.Bar 2d ed. 2008) Litigation Issues, § 11.35, p. 430, citing § 3426.7.) "At the same time, §3426.7 implicitly preempts alternative civil remedies based on trade secret misappropriation." (*Ibid.*)

As reflected in case law decided under the California statute, the determination of whether a claim is based on trade secret misappropriation is largely factual. (See, e.g., *Callaway Golf v. Dunlop Slazenger Group Americas* (D.Del. 2004) 318 F.Supp.2d 216, 220 [applying California law]; *Digital Envoy, Inc. v. Google, Inc.* (N.D.Cal. 2005) 370 F.Supp.2d 1025, 1035.)

---

[5] Further unspecified statutory references are to the Civil Code.

In *Callaway*, for example, claims by the cross-complainant for conversion and unjust enrichment were preempted, where they were "based entirely on the same factual allegations that form the basis of its trade secrets claim." (*Callaway Golf v. Dunlop Slazenger Group Americas, supra*, 318 F.Supp.2d at p. 220.) Similarly, because the cross-complainant could "[]not show that its negligence claim [was] 'supported by facts unrelated to the misappropriation of the trade secret,' [citation] its negligence claim" was also preempted. (*Id.* at p. 221.)

In *Digital Envoy*, the court determined "that California's statute, as persuasively interpreted in *Callaway*, preempts Digital's claims for unfair competition and unjust enrichment since those claims are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." (*Digital Envoy, Inc. v. Google, Inc., supra*, 370 F.Supp.2d at p. 1035.)

### c. *Relevance of UTSA Authority from Other Jurisdictions*

■ Section 3426.8 provides: "This title shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this title among states enacting it." In light of this provision, case law from other jurisdictions interpreting uniform statutory provisions similar to California's may be relevant. (See, e.g., *Coulter Corp. v. Leinert* (E.D.Mo. 1994) 869 F.Supp. 732, 734; *Smithfield Ham and Products Co. v. Portion Pac* (E.D.Va. 1995) 905 F.Supp. 346, 348; but see *Burbank Grease Services, LLC v. Sokolowski* (2006) 2006 WI 103 [294 Wis.2d 274, 298, 717 N.W.2d 781] ["cases from other jurisdictions cannot substitute for our construction of the relevant Wisconsin Statute"].) "In order to promote consistency in the uniform laws, California courts ordinarily adopt the construction given a uniform code section by other jurisdictions, unless the construction is manifestly erroneous." (*Estate of Reeves* (1991) 233 Cal.App.3d 651, 657 [284 Cal.Rptr. 650].)

■ Notably, however, the specific provision of California law at issue here (§ 3426.7) differs from the corresponding provision in the Uniform Trade Secrets Act (UTSA) (§ 7). The relevant differences appear in subdivision (a) of each provision.[6]

For purposes of our analysis here, the key difference between the California statute and the uniform act's provision is that the latter "displaces conflicting"

---

[6] Subdivision (a) of section 7 of the uniform act provides: "Except as provided in subsection (b), this [Act] displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret." (14 West's U. Laws Ann. (2005) U. Trade Secrets Act, § 7, subd. (a), p. 651.) By contrast, California's cognate provision reads as follows: "Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets." (§ 3426.7, subd. (a).)

law. (14 West's U. Laws Ann., *supra*, U. Trade Secrets Act, § 7, subd. (a), p. 651.) Among the states adopting the uniform version are Colorado, Minnesota, and Wisconsin. (See 14 West's U. Laws Ann., *supra*, U. Trade Secrets Act, § 7, Action in Adopting Jurisdictions, pp. 652–654; *Powell Products, Inc. v. Marks* (D.Colo. 1996) 948 F.Supp. 1469, 1474 [quoting Colorado's statute]; *Micro Display Systems, Inc. v. Axtel, Inc.* (D.Minn. 1988) 699 F.Supp. 202, 204 [quoting Minnesota's statute]; *Burbank Grease Services, LLC v. Sokolowski, supra,* 717 N.W.2d at p. 788 [quoting Wisconsin's statute].) As adopted in Minnesota, this provision means: "Only that law which conflicts with the MUTSA is displaced." (*Micro Display Systems, Inc. v. Axtel, Inc.*, at p. 205; accord, *Cardiac Pacemakers v. Aspen II Holding Co., Inc.* (D.Minn. 2006) 413 F.Supp.2d 1016, 1024.) "Under this displacement provision, courts will allow plaintiffs to maintain separate causes of action 'to the extent that causes of action have "more" to their factual allegations than the mere misuse or misappropriation of trade secrets.' " (*Cardiac Pacemakers v. Aspen II Holding Co., Inc.*, at p. 1024, quoting *Micro Display Systems, Inc. v. Axtel, Inc.*, at p. 205.) The same is true under Colorado law: "the UTSA only preempts common law claims that 'conflict' with its provisions." (*Powell Products, Inc. v. Marks*, at p. 1474.)

California has rejected that particular provision of the uniform act in favor of an entirely different one. (§ 3426.7, subd. (a).) "Typically, when a Legislature models a statute after a uniform act, but does not adopt the particular language of that act, courts conclude the deviation was deliberate and that the policy of the uniform act was rejected." (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 258 [15 Cal.Rptr.3d 244].) Thus, to the extent that other states' statutes conform to UTSA section 7, subdivision (a), which California has rejected, decisions interpreting that provision are not persuasive in construing California's unique statute.

### 2. *Analysis*

With those principles in mind, we turn to appellant's substantive challenge to the preemption ruling. We resolve that challenge using a two-step approach. First, we construe California's statute. Next, we apply it to the operative pleading here.

### a. *Construction of Section 3426.7*

When charged with interpreting a statute, " ' "our task is to determine afresh the intent of the Legislature by construing in context the language of the statute." . . . In determining such intent, we begin with the language of the statute itself. . . . That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning. . . . "If there is no ambiguity

in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' " ' " (*Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 358 [127 Cal.Rptr.2d 516, 58 P.3d 367], citations omitted; see also, e.g., *City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 625 [26 Cal.Rptr.3d 304, 108 P.3d 862].) Statutory interpretation presents a question of law for our independent review. (*Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1008 [36 Cal.Rptr.3d 592].)

Based in part on statutory language, appellant argues for a "narrow interpretation of preemption."[7] In appellant's view, "the California version of the UTSA does not contain language that suggests broad preemption." In support of that assertion, appellant first cites section 3426.7, subdivision (a), arguing that it "does not spell out what is preempted, but sets out what is not." Appellant makes a similar argument based on the language of subdivision (b), asserting that it "lists more exceptions to preemption but does not say what is preempted."

We reject that argument.

In the first place, we share the broad view that CUTSA's "comprehensive structure and breadth" suggests a legislative intent to occupy the field. (*Acculmage Diagnostics Corp. v. Terarecon, Inc., supra,* 260 F.Supp.2d at p. 953.) Among other things, CUTSA defines key terms, provides various forms of relief, spells out methods for preserving the secrecy of trade secrets, and sets forth the limitations period. (*Ibid.*) "The stated purpose of the UTSA is to provide 'unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law. The Uniform Act also codifies the results of the better reasoned cases concerning the remedies for trade secret misappropriation.' " (*American Credit Indemnity Co. v. Sacks* (1989) 213 Cal.App.3d 622, 630 [262 Cal.Rptr. 92], quoting 14 West's U. Laws Ann. (1980) U. Trade Secrets Act, comrs. note, pp. 537–538.)

---

[7] According to appellant: "Two views exist on UTSA preemption. The first, the broad view, holds that a cause of action is preempted if it is based on the same set of facts as the trade secrets claim." Appellant cites two federal cases applying California law as emblematic of that view: *Callaway Golf v. Dunlop Slazenger Group Americas, supra,* 318 F.Supp.2d 216, and *Digital Envoy, Inc. v. Google, Inc., supra,* 370 F.Supp.2d 1025. Appellant continues: "The second view, the narrow interpretation of preemption, holds that a common law cause of action can be based on the same nucleus of facts as the trade secrets claim, so long as it alleges new facts, different injuries and damages, or a different theory of liability." In support of that view, appellant offers federal cases applying Colorado, Minnesota, and Wisconsin law: *Powell Products, Inc. v. Marks, supra,* 948 F.Supp. 1469; *Micro Display Systems, Inc. v. Axtel, Inc., supra,* 699 F.Supp. 202; and *Burbank Grease Services, LLC v. Sokolowski, supra,* 717 N.W.2d 781.

Furthermore, and more narrowly, the proper focus in this case is on the language of subdivision (b)(2) of section 3426.7, which reads: "(b) This title does not affect . . . (2) other civil remedies that are not based upon misappropriation of a trade secret . . . ." It is that specific language that requires analysis and application here.

As has been aptly observed of section 3426.7, subdivision (b): "This provision would appear to be rendered meaningless if, in fact, claims which are based on trade secret misappropriation are not preempted by the state's statutory scheme." (*Digital Envoy, Inc. v. Google, Inc., supra,* 370 F.Supp.2d at p. 1035.) Additionally, the pertinent statutory language—"based upon misappropriation"—strongly suggests a factual inquiry, one that examines the conduct alleged in the claim. (See *AccuImage Diagnostics Corp. v. Terarecon, Inc., supra,* 260 F.Supp.2d at pp. 953–954 [determining preemption by examining "the conduct at issue"]; accord, *Callaway Golf v. Dunlop Slazenger Group Americas, supra,* 318 F.Supp.2d at p. 219.)

Nor do appellant's other arguments persuade us to a different conclusion. Appellant asserts that California courts generally do not favor preemption. But its proffered case authority is inapposite. The *Smith* case concerns federal preemption. (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1475 [38 Cal.Rptr.3d 653].) The *Linear* case concerns federal jurisdiction over patent and copyright claims. (*Linear Technology Corp. v. Applied Materials, Inc., supra,* 152 Cal.App.4th at p. 123; see also, e.g., *Balboa Ins. Co. v. Trans Global Equities* (1990) 218 Cal.App.3d 1327, 1342 [267 Cal.Rptr. 787] [court should analyze "each theory to determine whether it contains the necessary qualitatively different extra element distinguishing it from copyright protection"].) These California cases thus do not address the specific preemption question presented here—statutory preemption of common law. That being so, they offer no reasoned basis for allowing common law claims to go forward whenever they seek "something more" than trade secret relief. And as explained above, the UTSA cases from other jurisdictions that employ a "something more" test are based on a displacement provision that California did not adopt. (See, e.g., *Cardiac Pacemakers v. Aspen II Holding Co., Inc., supra,* 413 F.Supp.2d at p. 1024 [Minnesota law]; *Micro Display Systems, Inc. v. Axtel, Inc., supra,* 699 F.Supp. at p. 205 [Minnesota law]; *Powell Products, Inc. v. Marks, supra,* 948 F.Supp. at p. 1474 [Colorado law].)

▮ In sum, we agree with the federal cases applying California law, which hold that section 3426.7, subdivision (b), preempts common law claims that are "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." (*Digital Envoy, Inc. v. Google, Inc., supra,* 370 F.Supp.2d at p. 1035.) Depending on the particular facts pleaded, the

statute can operate to preempt the specific common claims asserted here: breach of confidence, interference with contract, and unfair competition. As we explain next, that is the case here.

### b. *Application to Appellant's Fifth Amended Complaint*

"Construction of a complaint presents a legal question for our independent review." (*Balboa Ins. Co. v. Trans Global Equities, supra,* 218 Cal.App.3d at p. 1343; see also, e.g., *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) In undertaking our review, "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context, and ignoring erroneous or confusing labels if the complaint pleads facts which would entitle the plaintiff to relief." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 385 [20 Cal.Rptr.3d 115].) We focus on "the actual gravamen of [the] complaint" in construing it. (*Id.* at p. 387.)

In this case, the complaint as a whole rests on factual allegations of trade secret misappropriation. (Cf. *Advanced Modular Sputtering, Inc. v. Superior Court* (2005) 132 Cal.App.4th 826, 835 [33 Cal.Rptr.3d 901] [for purposes of discovery commencement, "every cause of action is factually dependent on the misappropriation allegation . . ."]; see *id.* at p. 831 [the complaint there asserted causes of action based on plaintiff's confidentiality agreements with its former employees, misappropriation of trade secrets, unfair competition, unfair business practices, interference with prospective economic advantage, conversion, unjust enrichment, and declaratory relief].) Appellant effectively conceded as much earlier in the litigation, in its opposition to a demurrer to the fourth amended complaint.[8] That concession was warranted. "A fair reading" of appellant's fifth amended complaint thus "compels the conclusion that each and every cause of action hinges upon the factual allegation that [defendants] misappropriated [appellant's] trade secrets." (132 Cal.App.4th at p. 834.) That includes the causes of action for breach of confidence, interference with contract, and unfair competition.

---

[8] As relevant here, the demurrer addressed the second and fifth causes of action. As stated in the trial court's formal ruling, filed in May 2004, BA demurred to the second cause of action, for breach of confidence, "on the ground that the face of the complaint discloses that the claim is barred by the applicable statute of limitations, which is two years pursuant to C.C.P. § 339(1)." The court noted appellant's responsive contention "that the allegations upon which the new causes of action are predicated are the same operative facts as the original complaint, namely that Tam wrongfully took possession of Plaintiff's confidential proprietary information and disclosed the same to BA/BATO." The court accepted appellant's position, concluding that "the underpinning of all of the relevant causes of action is the improper taking and misappropriation of trade secrets by and between BA/BATO and Tam." The court reached the same conclusion as to the fifth cause of action, for tortious interference with contract. It observed: "The issues raised and arguments asserted in support of and opposition to BA's demurrer to the fifth cause of action are identical to those asserted in connection with the demurrer to the second cause of action. Thus, the same outcome should follow."

### Breach of confidence

"Because an action for breach of confidence may involve a trade secret, there would appear to be considerable overlap between a cause of action for breach of confidence and an action for trade secret misappropriation under the Uniform Trade Secrets Act." (3 Levy et al., Cal. Torts (2008) § 40.57[1], p. 40-118.6, fns. omitted.) "As yet, it is not clear to what extent, if any, a statutory cause of action for trade secret misappropriation supersedes a cause of action for breach of confidence." (*Ibid.*) However, one unpublished federal case applying California law "has found preemption under CC §3426.7 when the same facts supported both claims of misappropriation and breach of the duty of confidence." (Trade Secrets Practice in Cal., *supra*, Litigation Issues, § 11.37, p. 432.) Employing that same fact-driven approach here, we focus on the factual predicate for the claim and we reach the same result.

In its second cause of action for breach of confidence, appellant alleged that its former employee, defendant Allen Tam, owed it "a duty of confidence as to confidential information accessed during the course and scope of his employment, both under the common law and the Employment Agreement he entered into with plaintiff." Appellant further alleged that Tam "breached his duty of confidence to plaintiff by disclosing trade secrets in connection with proprietary technology and processes for wirelessproxy products" to respondents. As against respondents BA and BATO, appellant asserted that they "aided and abetted" Tam in committing that breach of duty "and gave substantial assistance or encouragement for him to so act."

As reflected in the pleading itself, the conduct at the heart of this claim is the asserted disclosure of trade secrets by Tam to respondents. Legally, disclosure of trade secrets without consent constitutes misappropriation. (§ 3426.1, subd. (b)(2).) Factually, that same conduct underpins appellant's first cause of action, for trade secret misappropriation. Appellant's claim for breach of confidence thus is "based on the same nucleus of facts" as the trade secret misappropriation claim. (*Digital Envoy, Inc. v. Google, Inc., supra*, 370 F.Supp.2d at p. 1035.) As a result, it is preempted. (*Ibid.*)

### Interference with contract

Like its breach of confidence claim, appellant's fifth cause of action for tortious interference with contract rests on the same legal and factual basis as its trade secret misappropriation claim.

In this cause of action, appellant alleged that respondents BA and BATO "engaged in intentional acts designed to induce a breach or disruption of plaintiff's contractual relationship" with Allen Tam by "helping" and "encouraging" him "to misappropriate KCM's wirelessproxy trade secrets and then

by luring Tam to become an employee of BA/BATO." Appellant further alleged that its "contractual relationship with Tam was disrupted and breached because Tam misappropriated KCM's wirelessproxy trade secrets and accepted employment with BA/BATO."

As before, the gravamen of the wrongful conduct asserted here is the misappropriation of trade secrets. Legally, that conduct falls within the statutory definition of "improper means" of acquiring a trade secret, which "includes . . . breach or inducement of a breach of a duty to maintain secrecy. . . ." (§ 3426.1, subd. (a).) Factually, the conduct derives from "the same nucleus of facts" as the trade secrets claim, and it is therefore preempted. (*Digital Envoy, Inc. v. Google, Inc., supra*, 370 F.Supp.2d at p. 1035.)

### Unfair competition

"California recognizes claims for both common law unfair competition and statutory unfair competition." (Trade Secrets Practice in Cal., *supra*, Litigation Issues, § 11.49, p. 452, citing *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254 [10 Cal.Rptr.2d 538, 833 P.2d 545].) "A claim for common law or even statutory unfair competition may be preempted under CC[] §3426.7 if it relies on the same facts as the misappropriation claim." (Trade Secrets Practice in Cal., *supra*, at p. 452, citing *AccuImage Diagnostics Corp. v. Terarecon, Inc., supra*, 260 F.Supp.2d at p. 955.) "Courts and commentators frequently analyze separately unfair competition and trade secrets protection." (*Balboa Ins. Co. v. Trans Global Equities, supra*, 218 Cal.App.3d at p. 1341.) "Nevertheless, at bottom, trade secret protection is itself but a branch of unfair competition law." (*Ibid.*)

California's statutory unfair competition law permits claims for "unlawful, unfair or fraudulent" business practices. (Bus. & Prof. Code, § 17200; *Feitelberg v. Credit Suisse First Boston, LLC, supra*, 134 Cal.App.4th at p. 1009.) "A business practice is unlawful 'if it is forbidden by any law . . . .' " (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 827 [135 Cal.Rptr.2d 1, 69 P.3d 927].) "A business practice, however, may be unfair or fraudulent in violation of the UCL even if the practice does not violate any law." (*Ibid.*)

Here, the sixth cause of action of appellant's fifth amended complaint alleged statutory unfair competition. Appellant claimed: "Defendants have engaged in the following unlawful, unfair, oppressive, and immoral business acts and practices: [¶] a) Misappropriation of trade secrets under Civil Code § 3426.1(b); [¶] b) Conspiracy to misappropriate trade secrets; and [¶] c) Injury to the public by hindrance of the creative and innovative process of

KCM, and other like businesses with whom they cont[r]act." Appellant further alleged: "In addition, defendants' practices are unlawful, unfair, oppressive, and immoral because they knowingly misappropriated KCM's wirelessproxy trade secrets with the knowledge that KCM had expended considerable effort and expense, and had taken risks, to develop its wirelessproxy trade secrets." In a similar vein, appellant asserted: "Defendants wrongfully took, and intended to wrongfully take, KCM's trade secrets to improve the operations of defendants' computer systems and thereby profit from the increased efficiencies and other benefits that KCM's trade secrets provide." In addition, "on behalf of the general public," appellant sought an injunction "requiring defendants to immediately cease such acts of unfair competition and enjoining defendants from continuing to misappropriate and benefit from KCM's trade secrets."

As with the other causes of action, appellant's statutory unfair competition claim rests squarely on its factual allegations of trade secret misappropriation. As a legal basis for its unfair competition claim, appellant asserts a violation of CUTSA. As a factual basis for its claim, appellant alleges the same conduct that gives rise to its trade secrets claim. (*Digital Envoy, Inc. v. Google, Inc., supra*, 370 F.Supp.2d at p. 1035.) That being so, this claim is also preempted.

For all these reasons, we reject appellant's substantive challenge to the preemption ruling.

## SUMMARY OF CONCLUSIONS

I. We find no basis for reversal in appellant's challenge to the special jury verdicts. The verdicts enjoy both factual and legal support.

II. We reject appellant's challenges to the preemption ruling, both procedural and substantive. To the extent that it preserved its procedural claims, appellant failed to show prejudicial error. As for appellant's substantive challenge to the ruling, we interpret the California statute as preempting claims based on the same nucleus of facts as trade secret misappropriation. Applying that construction to the operative pleading here, we agree with the trial court's conclusion that appellant's claims for breach of confidence, interference with contract, and statutory unfair competition are all preempted by CUTSA.

## DISPOSITION

The judgment is affirmed.

Mihara, Acting P. J., and Duffy, J., concurred.