CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE
*985 I. INTRODUCTION
Plaintiff ChromaDex, Inc. ("ChromaDex") filed this action against Defendant Elysium Health, Inc. ("Elysium") on December 29, 2016. (Dkt. 1 [Complaint].) On November 27, 2018, pursuant to the Court's order granting leave to amend under Federal Rule of Civil Procedure 15(a), ChromaDex filed a Fifth Amended Complaint. (Dkt. 153 [Fifth Amended Complaint, hereinafter "FAC"].) The Fifth Amended Complaint added Defendant Mark Morris. (Id. ) Before the Court is Defendants' motion to dismiss the sixth, seventh, and eighth claims of the Fifth Amended Complaint. (Dkt. 174 [hereinafter "Mot."].) For the following reasons, the motion is DENIED .[1]
II. BACKGROUND
The Fifth Amended Complaint alleges the following facts. ChromaDex is a corporation that develops patented ingredients for use in dietary supplements, food, beverages, skin care, and pharmaceuticals. (FAC ¶ 13.) Elysium is a corporation that sells a dietary supplement named "Basis." (Id. ¶ 2.) ChromaDex alleges that it was "Elysium's sole supplier of the two fundamental active ingredients" in Basis. (Id. ) These two ingredients are NIAGEN®, a health ingredient that is comprised of nicotinamide riboside ("NR"), and pTeroPure®, a health ingredient made of synthetic pterostilbene. (Id. )
ChromaDex and Elysium's dealings were "unremarkable" until 2016. (Id. ¶ 37.) Then, in 2016, Elysium secretly began developing an alternative manufacturing source for NR. (Id. ¶ 83.) To further this plan, Elysium began recruiting Mark Morris, ChromaDex's Vice President of Business Development. (Id. ¶ 38.) Elysium allegedly offered employment to Morris in exchange for his commitment to act as Elysium's inside agent before he terminated his employment with ChromaDex. (Id. ¶ 42.) Morris allegedly began giving to Elysium "confidential and proprietary information on ChromaDex's sales to other customers," including information concerning the prices and volumes of NR ordered by another ChromaDex customer. (Id. ¶ 39.) ChromaDex keeps this information, which is only accessible by its employees, in a highly-confidential document called the "Ingredient Sales Spreadsheet," which *986 tracks quarterly sales for all ingredients since 2012. (Id. ¶ 40.) While at ChromaDex, Morris allegedly texted and used his personal email account to send information to Elysium. (Id. ¶ 99.) Elysium recorded the information that Morris provided in a spreadsheet. (Id. ¶ 40.)
By providing this information to Elysium, Morris allegedly violated two confidentiality agreements that he signed at ChromaDex. On February 26, 2016, Morris executed an agreement entitled Receipt & Acknowledgement of Employee Handbook (the "February Confidentiality Agreement"). (Id. ¶ 19.) In the February Confidentiality Agreement, Morris agreed to protect ChromaDex's proprietary and confidential information and not to duplicate or remove any of ChromaDex's files, documents, and software. (Id. ¶ 20.) On July 15, 2016, Morris signed a Confidentiality and Non-Solicitation Agreement (the "July Confidentiality Agreement"). (Id. ¶ 23.) Sections 2 and 3 of the July Confidentiality Agreement required Morris to return all tangible items, such as computer-stored information and disks, and all ChromaDex trade secret and confidential information upon termination of his employment. (Id. ¶ 24.) Section 3 of the July Confidentiality Agreement also prohibited Morris from disclosing ChromaDex trade secret and confidential information to any other person or business entity or using or permitting others to use such information. (Id. ¶ 25.)
Using Morris's information, Elysium purportedly conspired with Morris and hatched a plan to obtain a market advantage over its competitors, including over ChromaDex. (Id. ¶ 44.) Under this plan, Elysium would order a twelve-month supply of NIAGEN and pTeroPure from ChromaDex. (Id. ¶ 47.) After obtaining a stockpile, Elysium then planned to seek out alternate sources of ingredients and eventually compete with ChromaDex in the manufacture of NR and synthetic pterostilbene. (Id. ¶ 49.) While still at ChromaDex, Morris apparently knew of Elysium's plans to displace ChromaDex in the market. (Id. )
Elysium then put its plan to action. On June 28, 2016, Elysium submitted two extraordinarily large purchase orders for NIAGEN and pTeroPure. (Id. ¶ 50.) These purchase orders contained a demand for the two products at less than half of the parties' agreed price. (Id. ) Morris arranged a phone call between the two companies to discuss the orders. (Id. ¶ 53.) On the phone call, Elysium's management represented that Elysium was ramping up production and would continue to place additional large orders in the next quarters. (Id. ¶ 55.) Based on these promises, ChromaDex offered Elysium a discounted price for NIAGEN. (Id. ) On June 30, 2016, Elysium submitted two revised purchase orders for pTeroPure and NIAGEN at a smaller quantity than the June 30 purchase orders, but still at three times the size of any of Elysium's previous fulfilled orders. (Id. ¶ 57.)
At this time, Morris, who remained a ChromaDex officer, failed to inform ChromaDex that Elysium's orders were expected to last for nine months, that Elysium did not intend to pay for the orders, and that Elysium was preparing to compete with ChromaDex by obtaining an alternate source of NR. (Id. ¶ 58.) ChromaDex sent its first shipment to fulfill the purchase orders on July 1, 2016. (Id. ¶ 61.) On July 15, 2016, Morris resigned from ChromaDex after one week's notice and allegedly started working for Elysium the next day. (Id. ¶¶ 70, 73.) On August 9, 2016, ChromaDex shipped the final shipment to fulfill the purchase orders and sent invoices to Elysium for $ 2,983,350. (Id. ¶¶ 61-63.)
*987 Since then, Elysium has refused to pay the amount due on the invoices. (Id. ¶ 68.)
In its sixth, seventh, and eighth causes of action, ChromaDex brings claims for breach of the July Confidentiality Agreement, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. (See generally id. ) Defendants now move to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). (Mot.)
III. LEGAL STANDARD
A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. Gilligan v. Jamco Dev. Corp. , 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. Moyo v. Gomez , 32 F.3d 1382, 1384 (9th Cir. 1994). The district court may also consider additional facts in materials that the district court may take judicial notice, Barron v. Reich , 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," Branch v. Tunnell , 14 F.3d 449, 454 (9th Cir. 1994), overruled in part on other grounds by Galbraith v. Cty. of Santa Clara , 307 F.3d 1119 (9th Cir. 2002).
However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ; see also Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted) ). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Twombly , 550 U.S. at 570, 127 S.Ct. 1955. In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. Doe v. United States , 58 F.3d 494, 497 (9th Cir. 1995).
IV. DISCUSSION
1. Breach of July Confidentiality Agreement
ChromaDex brings its sixth cause of action against Morris for breach of the July Confidentiality Agreement. (FAC ¶¶ 223-37.) To state a cause of action for breach of contract, a plaintiff must allege "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman , 51 Cal. 4th 811, 821, 124 Cal.Rptr.3d 256, 250 P.3d 1115 (2011). Defendants challenge whether there was an enforceable contract. A contract exists only if the parties are capable of contracting, they manifest objective consent, the contract has a lawful object, and there is sufficient consideration. Cal. Civ. Code § 1550.
*988 Defendants contend that ChromaDex fails to allege the July Confidentiality Agreement was supported by adequate consideration. (Mot. at 6-9.) The July Confidentiality Agreement states that ChromaDex's consideration includes "without limitation ... an offer of employment with [ChromaDex] in an at-will employment relationship and [Morris's] exposure to [ChromaDex's] proprietary and confidential business information as its employee." (FAC Ex. B.) Defendants, however, characterize this language as a "false recitation of consideration" because Morris left ChromaDex on the same day that he signed the July Confidentiality Agreement. (Mot. at 7.)
Under California law, "[a] written instrument is presumptive evidence of consideration." Cal. Civ. Code § 1614. A party seeking to invalidate or avoid a contract for lack of consideration bears the burden of showing that there was inadequate consideration. Id. § 1615. Accordingly, where a plaintiff alleges the existence of a written instrument, courts reject motions to dismiss premised on a failure to allege adequate consideration. See Ninespot, Inc. v. Jupai Holdings Ltd. , 2018 WL 3626325, at *7 (D. Del. July 30, 2018) (applying California law and declining to dismiss breach of contract claim for lack of consideration); DenimXworks Inc. v. J.L.J., Inc. , 2010 WL 11596164, at *4 (C.D. Cal. Mar. 4, 2010) (finding the plaintiff's claim for breach of contract did not fail for lack of consideration because the plaintiff sufficiently alleged the existence of a written instrument).
Defendants argue that California courts "regularly grant motions to dismiss breach of contract claims based on written agreements" for a lack of consideration. But many of the cases cited by Defendants do not even address California Civil Code § 1614. Cf. Roman v. Vericrest Fin., Inc. , 2013 WL 12142960, at *3 (C.D. Cal. Dec. 3, 2013) ; Graybill v. Wells Fargo Bank, N.A. , 2013 WL 978245, at *15 (N.D. Cal. Mar. 12, 2013) ; Odimbur v. Wells Fargo Bank , 2012 WL 680057, at *4 (C.D. Cal. Mar. 1, 2012) ; Patriot Sci. Corp. v. Korodi , 504 F.Supp.2d 952, 960-63 (S.D. Cal. 2007). Or Defendants' cited cases deal with letters or oral agreements, to which section 1614's presumption does not apply. See Michaelian v. State Comp. Ins. Fund , 50 Cal. App. 4th 1093, 1112, 58 Cal.Rptr.2d 133 (1996) ("The term 'written instrument' as it appears in [ section 1614 ] ... does not apply to letters, but only to more formal legal documents."); cf. Korodi , 504 F.Supp.2d at 960-63 (involving letter); In re Marriage of Flagg-Malek , 2012 WL 6675007, at *7 (Cal. Ct. App. Dec. 24, 2012) (same); Simmons v. Wachovia Bank, N.A. , 2008 WL 11337733, at *3 (C.D. Cal. Dec. 17, 2008) (addressing oral agreement).
Given the presumption under California Civil Code § 1614, the Court finds that ChromaDex adequately alleges that the July Confidential Agreement is supported by sufficient consideration. ChromaDex alleges that the July Confidentiality Agreement is a written instrument and attaches a copy of it to the Fifth Amended Complaint. (See FAC Ex. B.) ChromaDex also alleges that it "fulfilled its obligations under the July Confidentiality Agreement by providing Morris with employment and benefits." (FAC ¶ 226.) Although Morris ended his employment the same day that he signed the July Confidentiality Agreement, ChromaDex pleads that it provided Morris with continued access to ChromaDex confidential information after signing the contract and permitted him to leave without further assurances or steps to ensure that he had returned ChromaDex's confidential information. (Id. ¶¶ 26, 102.) Defendants' motion to dismiss the sixth cause of action is DENIED .
*989 2. Breach of Fiduciary Duty
ChromaDex brings its seventh cause of action against Morris for breach of fiduciary duty and its eighth cause of action against Elysium for aiding and abetting breach of fiduciary duty. (FAC ¶¶ 238-51.) To state a claim for breach of fiduciary duty, a plaintiff must allege (1) the existence of a fiduciary relationship, (2) its breach, and (3) damages proximately caused by that breach. AccuImage Diagnostics Corp. v. Terarecon, Inc. , 260 F.Supp.2d 941, 955 (N.D. Cal. 2003). A corporate officer, like Morris, owes a duty "not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it." Bancroft-Whitney Co. v. Glen , 64 Cal. 2d 327, 345, 49 Cal.Rptr. 825, 411 P.2d 921 (1966) (quoting Guth v. Loft , 5 A.2d 503, 510 (Del. 1939) ).
Defendant argues that ChromaDex's breach of fiduciary duty claims are preempted by the California Uniform Trade Secrets Act ("CUTSA"). In California, CUTSA provides "the exclusive civil remedy" for conduct "based upon misappropriation of a trade secret." Silvaco Data Sys. v. Intel Corp. , 184 Cal. App. 4th 210, 236, 109 Cal.Rptr.3d 27 (2010), disapproved of on other grounds , Kwikset Corp. v. Superior Court , 51 Cal. 4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011). CUTSA serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information, even if that information does not meet the statutory definition of a trade secret. See Silvaco , 184 Cal. App. 4th at 239 n.22, 109 Cal.Rptr.3d 27 ; Mattel, Inc. v. MGA Entm't, Inc. , 782 F.Supp.2d 911, 987 (C.D. Cal. 2010) ("[C]UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."); SunPower Corp. v. SolarCity Corp. , 2012 WL 6160472, at *7 (N.D. Cal. Dec. 11, 2012) (same).
Determining whether a claim is based on trade secret misappropriation is "largely factual." K.C. Multimedia Inc. v. Bank of Am. Tech. & Operations, Inc. , 171 Cal. App. 4th 939, 954, 90 Cal.Rptr.3d 247 (2009). CUTSA does not displace tort claims, which, "although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim." Angelica Textile Servs., Inc. v. Park , 220 Cal. App. 4th 495, 506, 163 Cal.Rptr.3d 192 (2013). Similarly, CUTSA does not preempt breach of fiduciary duty claims where those claims are not premised on the taking or use of confidential information. See, e.g. , id. at 508, 163 Cal.Rptr.3d 192 ; Hiossen, Inc. v. Kim , 2016 WL 10987365, at *16 (C.D. Cal. Aug. 17, 2016) (upholding breach of fiduciary duty claim premised on the defendant's alleged transfer of loyalty to a competitor before resigning); Robert Half Int'l, Inc. v. Ainsworth , 68 F.Supp.3d 1178, 1189-90 (S.D. Cal. 2014) (denying motion to dismiss breach of fiduciary duty claim where neither the breach nor alleged fiduciary role were based on the taking or use of proprietary or confidential information).
ChromaDex's breach of fiduciary duty claims are premised on two theories distinct from the misappropriation of confidential information. First, ChromaDex contends that Morris breached his fiduciary duty by encouraging ChromaDex to fulfill Elysium's extraordinarily large purchase orders in June 2016. (FAC ¶ 48.) Morris never disclosed that he had accepted an offer of employment from Elysium. (Id. ¶ 73.) Morris also did not inform ChromaDex *990 that Elysium's orders were expected to last for nine months, that Elysium did not intend to pay for the orders, and that Elysium was preparing to compete with ChromaDex by obtaining an alternate source of NR. (Id. ¶ 58.) Second, while a ChromaDex fiduciary, Morris allegedly helped Elysium recruit another senior ChromaDex employee, Ryan Dellinger. (Id. ¶ 71.) This conduct allegedly harmed ChromaDex because ChromaDex continued to pay Morris while he recruited Dellinger and Dellinger's resignation, with less than one day's notice, required the company to scramble to find a new Director of Scientific Affairs. (Id. ¶¶ 125, 240.) Since ChromaDex's breach of fiduciary duty claims are premised on conduct broader and different from the taking of confidential information, they are not preempted by CUTSA. Defendants' motion to dismiss the seventh and eighth causes of action is DENIED .
V. CONCLUSION
For the foregoing reasons, Defendants' motion to dismiss the sixth, seventh, and eighth causes of action is DENIED .

Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. See Fed. R. Civ. P. 78 ; Local Rule 7-15. Accordingly, the hearing set for February 11, 2019, at 1:30 p.m. is hereby vacated and off calendar.