Filed 11/7/13 (10/29/13 modification & unmodified opn. attached)
CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANGELICA TEXTILE SERVICES, INC., | D062405 |
| Plaintiff and Appellant, | (Super. Ct. No. 37-2010-00097967-CU-BT-CTL) |
| v. | |
| JAYE PARK et al., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT

It is ordered that the opinion filed herein on October 15, 2013 be modified as follows:

1.     On page 8, the second full paragraph, beginning "In posttrial proceedings" is deleted.

2.     At the end of the first full paragraph on page 8, after the sentence ending "Emerald had not suffered any damage," add as footnote 2 the following footnote, which will require renumbering of all subsequent footnotes:

2     In posttrial proceedings, the trial court found that Angelica had pursued its trade secrets cause of action in bad faith and for the purpose of litigating Emerald "'out of business.'"  Accordingly, the trial court awarded Emerald its attorney fees as well as its costs.  Angelica has filed a separate appeal from the attorney fees and costs awards, which appeal is now pending.  Our opinion and disposition do not reach the issues raised in that appeal.

The petition for rehearing has been considered by Justices Benke, Nares and McIntyre and is denied.

THERE IS NO CHANGE IN JUDGMENT

BENKE, Acting P. J.

Copies to:  All parties

Filed 10/29/13 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANGELICA TEXTILE SERVICES, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JAYE PARK et al., <br><br> Defendants and Respondents. | D062405 <br><br> (Super. Ct. No. 37-2010-00097967-CU-BT-CTL) <br><br> ORDER MODIFYING OPINION <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT

It is ordered that the opinion filed herein on October 15, 2013 be modified as follows:

1.      On page 1, add Judge Timothy B. Taylor to the designation of trial judge, which follows the words "APPEAL from a judgment of the Superior Court of San Diego County," so that it now reads:

> APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor and Joan M. Lewis, Judges.

This modification does not change the judgment.

_____

BENKE, Acting P. J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANGELICA TEXTILE SERVICES, INC., | D062405 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00097967-CU-BT-CTL) |
| JAYE PARK et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge. Affirmed in part; reversed in part.

Carothers DiSante & Freudenberger, Brent M. Giddens and Dan M. Forman for Plaintiff and Appellant.

Cooley, Seth A. Rafkin, Kraig D. Jennett and Lindsay P. Parker for Defendants and Respondents.

In this unfair competition lawsuit, the plaintiff, a large scale laundry business that provided linens to local hospitals and other health care facilities, sued a new competitor in the laundry business and one of its own former employees on a variety of theories, including a claim under the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.;

UTSA).  Prior to trial, the trial court granted the defendants summary adjudication on all of the plaintiff's non-UTSA claims.  The trial court found those claims were pre-empted or displaced by UTSA.[1]

A jury later found that, in fact, none of the information that the plaintiff asserted had been wrongfully appropriated was a trade secret within the meaning of UTSA, and the trial court entered a judgment in favor of the defendants.

On appeal, the plaintiff does not challenge the jury's verdict but argues the trial court erred in granting summary adjudication with respect to its non-UTSA claims.  We agree with the plaintiff.

By its terms, UTSA does not displace breach of contract claims, even if they are based in part on the alleged misappropriation of a trade secret.  Moreover, UTSA does not displace other claims when they are not based on an alleged misappropriation of a trade secret.

Here, the plaintiff asserted a former employee breached his employment agreement and his duty of loyalty to the plaintiff because, while still employed by the

---

[1]    "The parties sometimes use the word 'preempt' rather than 'displace' in discussing what effect the California [Commercial] Code has on the other causes of action. Technically, the doctrine of preemption concerns whether a federal law has superseded a state law or a state law has superseded a local law, not whether one provision of state law has displaced other provisions of state law.  [Citations.]  Here, the California [Commercial] Code and other causes of action are all matters of state law.  Accordingly, we will use the word 'displace' in discussing this issue."  (*Zengen, Inc. v. Comerica Bank* (2007) 41 Cal.4th 239, 247, fn 5.)  Although another Court of Appeal prefers the term "supersession" in discussing the impact UTSA has on other laws and nominally non-UTSA claims, we will adopt the nomenclature employed by our Supreme Court and discuss whether another law or claim has been "displaced" by UTSA.  (But see, *Silvaco Data Systems v. Intel Corp.* (2010) 184 Cal.App.4th 210, 232, fn. 14 (*Silvaco*).)

plaintiff, the employee disparaged the plaintiff to a local bank and, in negotiating new linen contracts with large customers of the plaintiff, gave the customers cancellation rights that are not customary in the industry and that permitted those customers to shortly thereafter take their business to the employee's new employer. The breach of contract and breach of fiduciary duty theories advanced by the plaintiff do not depend on any misappropriation of trade secrets and therefore are not displaced by UTSA. Those theories also independently support the plaintiff's related claims for statutory and common law unfair competition and interference with business relations.

The plaintiff also asserted that upon the employee's resignation, the employee retained thousands of pages of documents that the plaintiff owns. The plaintiff asked that the employee return the documents, and the record shows he failed to do so. Although the documents may have little if any value in light of the jury's finding the defendants did not appropriate any trade secrets, the defendant employee's possession of them will support a conversion claim independent of any trade secret.

Accordingly, we reverse the trial court's judgment in part and remand for further proceedings on the plaintiff's non-UTSA claims.

FACTUAL BACKGROUND

A. *Angelica*

Plaintiff and appellant Angelica Textile Services, Inc. (Angelica) provides linens and laundry services to hospitals and healthcare facilities throughout the United States. It has operated in the San Diego area for many years and arguably, at all pertinent times, controlled 90 percent of the hospital linen and laundry market in San Diego.

3

B. *Park*

Defendant and respondent Jay Park (Park) began working for Angelica in San Diego in 1982 when Angelica purchased his former employer, Blue Seal Linen. By 2008, Park had been promoted to the position of market vice president and was responsible for the operations of Angelica's San Diego and Phoenix laundry plants.

During the course of his employment with Angelica, Park signed a noncompetition agreement under which he promised he would "give his best endeavors, skill and attention to the discharge of his duties with the Company in a manner consistent with his position, at such place or places as may be reasonably expected or required by the Employer in the furtherance of its business."

Park also promised he would not, during his employment, "become interested, directly or indirectly, as a partner, officer, director, stockholder, advisor, employee, independent contractor or in any other form or capacity, in any other business similar to Company's business."

C. *Emerald*

1. 2008

In 2008, while still employed by Angelica, Park engaged in a series of conversations, preparations and negotiations with representatives of two of Angelica's largest customers in San Diego, Sharp Healthcare (Sharp) and Scripps Health (Scripps). The goal of the negotiations was a proposed linen and laundry enterprise to be jointly operated by Sharp and Scripps. The new laundry would provide services not only to Sharp and Scripps but also to other Angelica customers.

Given his lengthy experience in the industry, Park prepared a business plan for the joint venture that described both Angelica's role as virtually the only provider of laundry services in the area and what Park viewed as Angelica's "limited" and "aged" facilities. The business plan also contained detailed financial projections, including likely production costs and revenues.

In September 2008, Sharp's board of directors decided not to pursue the laundry joint venture. However, two members of the Sharp board, Tom Gildred and Bob Payne, became very interested in the opportunity to compete in the laundry service business in San Diego and began discussing with Park the possibility of starting an independent competing laundry service in the area.

2. 2009

While still employed by Angelica, Park worked with Gildred and Payne throughout 2009 as the latter two organized a competing laundry business operating as defendant and respondent Emerald Textiles, LLC (Emerald). There is no dispute Gildred and Payne used the business plan Park had prepared in support of the proposed Sharp/Scripps joint venture in promoting their new enterprise, consulted with him, and used him in attempting to obtain financing.

In particular, Park met with officers of the Torrey Pines Bank in the fall of 2009 in an effort to obtaining financing for Emerald. According to one of those officers, Park told them Angelica was not providing good quality linens and service to its customers because, following its acquisition by private investors, the company had cut back on spending. Park told the bank he had received comments from hospital personnel to the

5

effect the linen Angelica provided was of poor quality, had stains on it, and was not acceptable to them. Park also provided the bank with photographs of Angelica's production equipment that portrayed the equipment as of poor quality, old, and in need of repair.

During 2009, Park was also responsible for negotiating new contracts with Angelica's San Diego customers, including its largest customers, Sharp and Scripps. The 2009 contracts Park negotiated for Sharp, Scripps, and other health care providers permitted the customers to terminate the contract for Angelica's services without cause and without penalty on 90 days notice. Angelica asserted these contracts were outside the industry standard which, in light of a laundry vendor's substantial investment, typically require long-term contracts with penalties for early termination.

3. 2010

In 2010, after obtaining financing, Emerald built a state-of-the-art laundry facility. In March 2010, Park resigned from his position at Angelica and shortly thereafter began work as the chief operating officer at Emerald.

Emerald thereafter successfully bid for laundry contracts with Sharp and Scripps. After it won the contracts with Sharp and Scripps, Emerald recruited more than 40 of Angelica's former employees.

PROCEDURAL HISTORY

After Park left Angelica and very near the time Emerald submitted successful bids for Sharp and Scripps laundry services, Angelica filed a complaint against Emerald and Park (hereafter sometimes collectively referred to as defendants), alleging claims for

6

misappropriation of trade secrets, violation of Business and Professions Code section 17200, unfair competition, interference with business relationships, and breach of contract.

In 2011, Angelica filed a second amended complaint (SAC), which is the operative complaint herein. The SAC again set forth causes of action for misappropriation of trade secrets, violation of Business and Professions code section 17200, unfair competition, interference with business relationships, and breach of contract; however, the SAC also included causes of action alleging conversion and, as against Park only, a breach of fiduciary duty claim.

For its part, Emerald filed a cross-complaint against Angelica that alleged causes of action for intentional interference with prospective economic advantage, intentional interference with contract, and unfair competition.

Prior to trial, Emerald and Park moved for summary judgment and summary adjudication. In their motions, Emerald and Park argued that Angelica could not establish the existence of any trade secret that Emerald or Park had appropriated and that most of Angelica's remaining causes were displaced by UTSA. Importantly, with respect to the cause of action for breach of contract, Emerald and Park did not argue that it was displaced by UTSA; rather, they argued that in the absence of proof of a trade secret, Angelica could not show that a breach of contract had occurred.

The trial court denied the motion for summary judgment because it found that pending discovery might provide Angelica with information and evidence that would supports its trade secrets claim. However, the trial court granted defendants' motion for

summary adjudication on all of Angelica's non-UTSA claims, including its breach of contract claim against Park. The trial court found that all of Angelica's non-UTSA claims were based on defendants' alleged misappropriation of trade secrets and were therefore displaced by UTSA.

At trial, a jury returned a verdict in favor of Emerald and Park on Angelica's trade secrets cause of action. The jury also found that Angelica had interfered with Emerald's contracts with Sharp and Scripps but that Emerald had not suffered any damage.

In posttrial proceedings, the trial court found that Angelica had pursued its trade secrets cause of action in bad faith and for the purpose of litigating Emerald "'out of business.'" Accordingly, the trial court awarded Emerald its attorney fees.

Angelica filed a timely notice of appeal.

## DISCUSSION[2]

As we indicated at the outset, on appeal Angelica does not challenge the jury's verdict on its trade secrets cause of action. Rather, on appeal, Angelica argues the trial court erred in granting defendants' summary adjudication on its six non-UTSA causes of action. We agree with Angelica, and we reverse and remand for further proceedings.

## I

Preliminarily, we reject defendants' contention we should not reach the merits of Angelica's contentions.

Generally, orders granting summary adjudication are interlocutory orders and, as

---

[2] We deny Angelica's motion to strike Emerald and Park's appendix and portions of their respondents' brief.

8

such, are not appealable.  (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 128; *Jacobs-Zorne v. Superior Court* (1996) 46 Cal.App.4th 1064, 1070.)  However, they may be reviewed on appeal from a final judgment entered thereafter.  (*Jennings v. Marralle*, *supra*, at p. 128; *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 344.)  Orders granting summary adjudication may also be reviewed by way of a petition for a peremptory writ.  (Code Civ. Proc., § 437c, subd. (m)(1).)  However, there is no requirement in our summary judgment statute that parties who wish to challenge orders granting summary adjudication do so by way of a writ petition.  (*Federal Deposit Ins. Corp. v. Dintino*, *supra*, at p. 344.)

Moreover, contrary to defendants' argument, there is no requirement that a losing party move for reconsideration of an order granting summary adjudication.  An order granting summary adjudication is not a determination of disputed factual issues and does not require that parties object to any defects in a trial court's ruling in order to assert those defects on appeal.  (But see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1134; Code Civ. Proc., § 634 [defects in statement of decision following trial must be raised in trial court or are waived].)

Finally, as we explain more fully below, each of the facts that Angelica relies upon in asserting the trial court erred in granting summary adjudication was set forth in Angelica's own separate statement of facts filed in opposition to defendants' motion; each factual assertion was in turn supported with a reference to evidence in the record.  Thus, contrary to defendants' contention, Angelica has not raised issues for the first time on appeal.  (See *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th

9

308, 315-316.)

The standard of review on a motion for summary judgment or summary adjudication is familiar. A defendant meets his or her burden in a summary adjudication motion "by negating an essential element of the plaintiff's case, or by establishing a complete defense, or by demonstrating the absence of evidence to support the plaintiff's case." (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1142; Code Civ. Proc., § 437c, subd. (f)(1) [party may move for summary adjudication as to "one or more affirmative defenses"].) "We review questions of law as well as orders granting summary adjudication under the de novo standard of review." (*Lafferty v. Wells Fargo Bank* (2013) 213 Cal.App.4th 545, 556.) Likewise, the interpretation of a statute presents a legal question we review independently. (*Ibid.*)

III

The principal substantive issue raised on appeal is the scope of UTSA. The court in *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939 (*K.C. Multimedia*) set forth UTSA's principal provisions, its broad purposes and its impact on non-UTSA claims:

"California's Uniform Trade Secrets Act (CUTSA) is codified in sections 3426 through 3426.11 of the Civil Code. [Citations.] CUTSA has been characterized as having a 'comprehensive structure and breadth . . . .' [Citation.] 'Here, the eleven provisions of the UTSA set forth: the definition of "misappropriation" and "trade secret," injunctive relief for actual or threatened misappropriation, damages, attorney fees,

10

methods for preserving the secrecy of trade secrets, the limitations period, the effect of the title on other statutes or remedies, statutory construction, severability, the application of title to acts occurring prior to the statutory date, and the application of official proceedings privilege to disclosure of trade secret information.' [Citation.] That breadth suggests a legislative intent to preempt the common law. [Citations.] At least as to common law trade secret misappropriation claims, 'UTSA occupies the field in California.' [Citation.]

"CUTSA includes a specific provision concerning preemption. That provision, section 3426.7, reads in pertinent part as follows: '(a) Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets. [¶] (b) This title does not affect *(1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret*, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.' Section 3426.7 thus 'expressly allows contractual and criminal remedies, whether or not based on trade secret misappropriation.' [Citation.] 'At the same time, § 3426.7 implicitly preempts alternative civil remedies based on trade secret misappropriation.' (Ibid.)

"As reflected in case law decided under the California statute, *the determination of whether a claim is based on trade secret misappropriation is largely factual*. (See, e.g., *Callaway Golf v. Dunlop Slazenger Group Americas* (D.Del. 2004) 318 F.Supp.2d 216, 220 [applying California law]; *Digital Envoy, Inc. v. Google, Inc.* (N.D.Cal. 2005) 370 F.Supp.2d 1025, 1035.)

11

"In *Callaway*, for example, claims by the cross-complainant for conversion and unjust enrichment were [displaced], where they were 'based entirely on the same factual allegations that form the basis of its trade secrets claim.' (*Callaway Golf v. Dunlop Slazenger Group Americas*, *supra*, 318 F.Supp.2d at p. 220.) Similarly, because the cross-complainant could '[]not show that its negligence claim [was] "supported by facts unrelated to the misappropriation of the trade secret," [citation] its negligence claim' was also [displaced]. (*Id*. at p. 221.)

"In *Digital Envoy*, the court determined 'that California's statute, as persuasively interpreted in *Callaway*, [displaces] Digital's claims for unfair competition and unjust enrichment since those claims are *based on the same nucleus of facts as the misappropriation of trade secrets claim for relief*.' (*Digital Envoy, Inc. v. Google, Inc.*, *supra*, 370 F.Supp.2d at p. 1035.)" (*K.C. Multimedia*, *supra*, 171 Cal.App.4th at pp. 954-955, italics added & fn. omitted.)

In considering whether a particular claim has been displaced, we must recognize "a prime purpose of the law was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information . . . of value.' [Citation.]" (*Silvaco*, *supra*, 184 Cal.App.4th at p. 239, fn. 22.) In general, the acquisition, disclosure or transfer of information that does not fit UTSA's definition of a trade secret does not give rise to any liability, even when that liability is couched in terms of a separate tort or statutory violation. (See *Silvaco*, at p. 239, fn. 21 [information that is not a trade secret or protected by some other provision of law cannot be converted].)

12

However, as Angelica urges, UTSA by its terms does not displace a contract claim, even if it is based on the misappropriation of a trade secret. (Civ. Code, § 3426.7, subd. (b)(1).) Moreover, UTSA does not displace noncontract claims that, although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim. (*Silvaco*, *supra*, 184 Cal.App.4th at pp. 241-242; *Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commun., Inc.* (S.D.Cal., Oct. 21, 2011, No. 11-CV-1890-H) 2011 U.S. Dist. Lexis 122420; *Gabriel Techs. Corp. v. Qualcomm Inc.* (S.D.Cal., Sept. 3, 2009, No. 08cv1992-MMA(POR)) 2009 U.S. Dist. Lexis 98379; *E-Smart Techs., Inc. v. Drizin* (N.D.Cal., Jan. 6, 2009, No. C 06-05528 MHP) 2009 U.S. Dist. Lexis 272.)

With respect to those noncontract claims that are not displaced by UTSA, *Silvaco* is instructive. In *Silvaco*, the plaintiff alleged the defendant, by purchasing software from a third party that had allegedly stolen confidential source codes from the plaintiff, was liable under both the UTSA and the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.). The plaintiff's UCL claim was not based on any misappropriation of a trade secret but instead was based on the defendant's alleged participation in the third party's violation of an injunction that prevented the third party from transferring the disputed software.

In finding that the plaintiff's UCL claim was not displaced by UTSA, the court in *Silvaco* stated: "Such a claim does not depend on the existence of a trade secret, but on knowingly facilitating another in the violation of its obligations under a judicial decree. If one is enjoined from disclosing information, and one discloses that information in

13

violation of the injunction, the legal consequences of that act are not affected by the status of the information as a trade secret. Indeed it may not, and need not, *be* a trade secret. The injunction might be entered in the preliminary stages of an action, and the wrong would be complete when the judgment was violated, even if it were ultimately found that the information was *not* a trade secret. In such a case, of course, the aider-abettor might raise a substantial question about *damages*, but his *liability* for facilitating the enjoined party's contempt would not depend on the correct legal characterization of the information whose contemptuous disclosure he facilitated. Indeed the injunction might rest on some rationale entirely apart from trade secrets law, such as that the plaintiff is under an independent duty of nondisclosure, and the consequences of disclosure—and of facilitating disclosure—would be the same. In the present matter, it appears that the injunction was the product of a stipulation, so the question of trade secrets was apparently never adjudicated. This fact has no effect on the gist of the claim, which is that Intel helped CSI to violate the latter's solemn obligations under a judgment. Such a claim appears to fall well outside the reach of CUTSA [displacement]." (*Silvaco*, *supra*, 184 Cal.App.4th at pp. 241-242.)

IV

Our review of the record shows that none of the non-UTSA claims asserted in Angelica's SAC were displaced. Angelica's claims for breach of contract, breach of fiduciary duty, unfair competition, interference with business relations and conversion

14

each have a basis independent of any misappropriation of a trade secret.[3]

A. *Breach of Contract*

In opposing Emerald's motion for summary adjudication of its breach of contract cause of action, Angelica relied upon the terms of the noncompetition agreement Park signed and deposition testimony from him and third party witnesses which showed that, while still employed at Angelica, Park was actively engaged in first promoting the joint Sharp/Scripps laundry proposal and then successfully starting Emerald. On this record, Angelica's breach of contract cause of action against Park was not displaced by UTSA.

As Angelica points out, breach of contract claims, even when they are based on misappropriation or misuse of a trade secret, are not displaced by UTSA. (Civ. Code, § 3426.7, subd. (b)(1).) However, Angelica's breach of contract cause of action in fact is *not* based on any misappropriation of a trade secret but on Park's entirely independent violation of the noncompetition agreement. Thus, it is outside the scope of UTSA displacement on that basis as well. (*Silvaco*, *supra*, 184 Cal.App.4th at pp. 241-242.)

---

3    We recognize that in support of its motion, Emerald relied upon responses to interrogatories that Angelica filed several months before the motion for summary adjudication. The interrogatories asked Angelica to state all facts that supported each of its claims. In response, Angelica stated that each of its claims was supported by defendants' misappropriation of trade secrets.

However, the record shows that later, when confronted with Emerald's motion for summary adjudication, Angelica asserted its claims were not only supported by defendants' misappropriation of trade secrets but also by Park's conduct while he was still an employee of Angelica, which it asserted it only discovered after it provided its interrogatory responses. Importantly, in response to Emerald's motion, Angelica produced evidence that supported its additional theories of liability. Given this record, the trial court could not, in ruling on Angelica's motion, simply ignore the additional theories of liability advanced by Angelica and the additional evidence it produced. (See *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 856.)

15

B. *Breach of Fiduciary Duty, Unfair Competition and Interference with Business Relations*

In opposing Emerald's motion for summary adjudication of its claims for breach of fiduciary duty, statutory and common law unfair competition, and interference with business relations, Angelica relied on essentially the same theory it asserted in support of its breach of contract cause of action:  Angelica argued these claims were based on Park's wrongful conduct in violating the noncompetition agreement and violating his duty of loyalty to Angelica.  Because Angelica's theory of liability on these claims was independent of any trade secret claim, they too are not displaced by UTSA.  (*Silvaco*, *supra*, 184 Cal.App.4th at pp. 241-242.)

C. *Conversion*

In arguing its conversion claim was not displaced, Angelica argued that even if the documents Park took with him when he left Angelica contained no trade secrets, they were still tangible property and therefore the proper subject of a conversion claim.  Again, because the asserted claim is not based on the existence of a trade secret, it was not displaced.  (*Silvaco*, *supra*, 184 Cal.App.4th at pp. 241-242.)

V

As Emerald points out, even when a trial court relies upon erroneous reasoning, its ruling granting a motion for summary adjudication will be affirmed if it is nonetheless correct on any grounds that appear in the record and the opposing party had an adequate opportunity to address it.  (See *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22.)  Thus, Emerald offers alternative theories that it contends support

16

the trial court's summary adjudication order. As we explain, on this record, these arguments are not persuasive.

A. *Business and Professions Code section 16600*

Business and Professions Code section 16600 states: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." As Angelica points out, Business and Professions Code section 16600 has consistently been interpreted as invalidating any employment agreement that unreasonably interferes with an employee's ability to compete with an employer *after* his or her employment ends. (See *Muggill v. Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242.) However, the statute does not affect limitations on an employee's conduct or duties *while* employed. "While California law does permit an employee to seek other employment and even to make some 'preparations to compete' before resigning [citation], California law does not authorize an employee to transfer his loyalty to a competitor. During the term of employment, an employer is entitled to its employees' 'undivided loyalty.' [Citation.]" (*Fowler v. Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 41.)

In particular, we note that as an officer of Angelica, Park owed the corporation a fairly broad duty of loyalty: "'Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders. A public policy, existing throughout the years, derived from a profound knowledge of human characteristics and motives, has established a rule that demands of a corporate

17

officer or director, peremptorily and inexorably, the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers.'" (*Bancroft-Whitney Co. v. Glen* (1966) 64 Cal.2d 327, 345.)

In sum, because Angelica's non-UTSA claims are based on Park's conduct during his employment by Angelica, contrary to Emerald's argument, they are in no sense barred by Business and Professions Code section 16600.

B. *Interference with Business Relations, Unfair Competition*

The tortious conduct needed to support a claim for interference with business relations may include wrongful employee and customer recruitment. (See *Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1153-1155.) In turn, the conduct needed to maintain a statutory or common law unfair competition cause of action may consist of a tortious interference with business relations. (See *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.* (9th Cir. 2007) 479 F.3d 1099, 1107 [interference with competitor's employment contracts may constitute unlawful business practice sufficient to support UCL claim].)

Given these legal principles and the record, we cannot affirm the order granting summary adjudication on the alternative grounds the interference and unfair competition claims lack substantive merit. As we have discussed, Angelica produced evidence that Park engaged in wrongful recruitment of Angelica's customers while he was still an

18

Angelica employee.  This conduct, if established, would support Angelica's interference and unfair competition claims.

C. *Conversion*

Park argues that because the documents he retained contained no trade secrets, they had no value and hence were not subject to conversion.  (See *United States Rubber Co. v. Union Bank & Trust Co*. (1961) 194 Cal.App.2d 703, 709.)  Although Park may well be able to show that they have no value, that issue was not fully litigated on the motion for summary adjudication and hence is not an appropriate alternative grounds for affirming the order adjudicating the conversion claim.

D. *Damages*

In light of the Sharp and Scripps contracts that Angelica lost to Emerald, we cannot say as a matter of law that Angelica cannot show that it was damaged by Park's or Emerald's activities.

DISPOSITION

Although we have found that Angelica's non-UTSA claims are not displaced by UTSA and that the record here does not permit us to dispose of them on the merits, we wish to emphasize that we have not reached any conclusion with respect to the substantive merits of those claims and that, on a fuller record, Emerald and Park may have dispositive defenses to some or all of the non-UTSA claims.

19

The judgment is reversed with respect to the non-UTSA causes of action; in all other respects, the judgment is affirmed. Angelica to recover its costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

McINTYRE, J.

20