Filed 6/30/14  Horvath v. State Farm General Ins. Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PETER HORVATH et al., | |
| Plaintiffs and Appellants, | G048457 |
| v. | (Super. Ct. No. 30-2012-00544587) |
| STATE FARM GENERAL INSURANCE COMPANY, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

Shields Law Offices, Jeffrey W. Shields, and Rick A. Varner for Plaintiffs and Appellants.

LHB Pacific Law Partners, Michael J. McGuire, and Matthew F. Batezel for Defendant and Respondent.

\*          \*          \*

Plaintiffs Peter and Susan Horvath's home suffered water damage after a heavy rain storm overwhelmed the storm drains in their neighborhood, causing water to come coursing down to nearby hills and surround their home with approximately three feet of water. Plaintiffs tendered a claim on their homeowners insurance policy. Defendant State Farm General Insurance Company (State Farm) denied the claim based on exclusions in the policy for damage caused by "flood" or "surface water." The trial court granted summary judgment to State Farm, finding the damages were caused by either or both.

On appeal plaintiffs contend a "flood" cannot be caused simply by excess rainfall, but only by an existing body of water exceeding its bounds and inundating the surrounding area with water. That would be news to Noah. (Genesis 7:17.) We hold the plain meaning of "flood" includes deluges caused by excess rainfall, which is what happened here. Because plaintiffs' claim was properly denied based on the "flood" exclusion, we do not reach the "surface water" exclusion.

## FACTS[1]

In December of 2010 plaintiffs owned and lived in a house located at the end of a cul-de-sac at the bottom of Bell Canyon Drive in Dove Canyon, California. "Bell Canyon Drive slopes downhill for approximately one mile from its highest elevation down to the Property." "Plaintiffs' home is set back from Bell Canyon Drive and sits at a slightly higher elevation than the street." "Bell Canyon Drive is an asphalt paved street, bordered on each side by cement curbs which guide drainage waters down the street. In addition to the curbs, Bell Canyon Drive's manmade drainage system

---

[1] Unattributed quotations in this statement of facts are taken from the parties' respective separate statements of undisputed material facts submitted in connection with defendant's motion for summary judgment.

includes numerous storm drains located at intermittent points on either side of the street, including . . . one located directly across the street from the Property."

Bell Canyon Drive is bordered on one side by hillsides that slope downward towards the street. There are concrete drainage ditches built along and down those upper hillsides, which ultimately empty into the Bell Canyon Drive storm drains. One of those drainage ditches empties into the storm drain directly in front of plaintiffs' property.

Plaintiffs purchased a homeowners insurance policy for the property from State Farm. The policy provides that State Farm will provide plaintiffs with coverage for all risks of accidental property damage occurring to the property, except as expressly excluded. The exclusion at issue states, "We do not insure under any coverage for any loss which is caused by" "Water Damage, meaning:" "flood, surface water, waves, tidal water, tsunami," and other similar events. The term "flood" is not further defined in the policy.

On December 22, 2010, the house was seriously damaged when rain waters channeled into and down the drainage systems on Bell Canyon Drive overwhelmed the storm drains near the property. That morning, plaintiffs' neighbor alerted them that waters from Bell Canyon Drive were coming up their driveway toward their home. From their home, plaintiffs "observed large amounts of waters coming down Bell Canyon Drive, as well as waters flowing down the drainage ditches and off the hillsides onto Bell Canyon Drive." Plaintiff Peter Horvath described its appearance as a "river of water coming down the street . . . ." They also observed the end of the cul-de-sac in front of their home being filled with water and rising quickly up their driveway. The water rose to a point where it nearly covered the mailbox in front of their home, "which stood approximately five feet over curb level."

The water eventually breached plaintiffs' home, entering through various crevices, causing substantial damage to the house and its contents. Plaintiffs fled

3

upstairs.  Later that morning, "firefighters performed a mandatory evacuation of plaintiffs from the house."

Afterwards, the water line on the exterior stucco of the house was approximately three feet above ground level.  The interior water damage was about 18 inches through the first floor of the house.  "The City of Rancho Santa Margarita yellow-tagged Plaintiffs' house as unsafe to live in.  The tag indicated that the cause of the damage was 'flood.'"

As a result of the damage, plaintiffs contacted State Farm that same day and notified it of their claim.  State Farm sent two different inspectors to the home over the course of two weeks.  "On February 16, 2011, State Farm sent plaintiffs a letter denying the Claim, stating that the damage to the house was not covered by the Policy due to several exclusions, including exclusions for flood and surface water."

Plaintiffs sued, asserting causes of action for bad faith breach of insurance policy, breach of contract, and declaratory relief.  State Farm filed a motion for summary judgment, or, in the alternative, summary adjudication.  The court granted State Farm's motion in full, stating plaintiffs' claims were defeated by the exclusion in the policy for flood and surface water damage.  The court entered judgment, and plaintiffs timely appealed the judgment.

DISCUSSION

*Legal Principles*

"The standard of review on a motion for summary judgment or summary adjudication is familiar. A defendant meets his or her burden in a summary adjudication motion 'by negating an essential element of the plaintiff's case, or by establishing a complete defense, or by demonstrating the absence of evidence to support the plaintiff's case.' [Citations.]  'We review questions of law as well as orders granting summary

4

adjudication under the de novo standard of review.'" (*Angelica Textile Services, Inc. v. Park* (2013) 220 Cal.App.4th 495, 504.)

"When determining whether a particular policy provides a potential for coverage . . . , we are guided by the principle that interpretation of an insurance policy is a question of law. [Citation.] The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 (*Waller*).)

"Interpretation of an insurance policy . . . follows the general rules of contract interpretation." (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 647 (*MacKinnon*).) "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties." (*Waller*, *supra*, 11 Cal.4th at p. 18.) "'Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.]' [Citations.] A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citations.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. [Citation.] Courts will not strain to create an ambiguity where none exists." (*Id.* at pp. 18-19.)

Where an insurance policy is ambiguous, it will be construed in favor of coverage if it can reasonably be so interpreted. (*State Farm Mut. Auto. Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 201-203.) "Moreover, insurance coverage is "'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer.'"

5

[Citation.] '[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." [Citation.] Thus, "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." [Citation.] The exclusionary clause "must be *conspicuous*, *plain and clear*."'" (*MacKinnon*, *supra*, 31 Cal.4th at p. 648.)

*"Flood" Is Not Ambiguous and Applies to Plaintiffs' Claim*

Plaintiffs contend the word "flood" is ambiguous, and since at least one definition of flood would fall outside the exclusion of the policy, that definition must prevail. Plaintiffs cite the Federal Emergency Management Agency's (FEMA) National Flood Insurance Program Summary of Coverage, which defines flood, first, "[i]n simple terms," as "an excess of water on land that is normally dry." That definition would clearly apply to plaintiffs' claim. But the document goes on to quote the National Flood Insurance Program's more detailed definition as, "'A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from: [¶] Overflow of inland or tidal waters; [¶] Unusual and rapid accumulation of runoff of surface waters from any source; [¶] Mudflow*; or [¶] Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined above.'"

Of those causes, the only one potentially applicable here is "runoff of surface waters." Plaintiffs spend the bulk of their brief explaining, persuasively, that once water starts flowing along a channel, such as Bell Canyon Drive, it is no longer considered "surface water." The problem is, the "flood" is not the surface water itself,

but the *runoff* of surface water. It seems likely to us that the FEMA summary would regard a deluge of rain water as the *runoff* of surface water.

We need not decide that issue, however, because our task is not to construe the FEMA document, but instead to decide whether the ordinary and plain meaning of the word "flood" would encompass the water that damaged plaintiffs' home. We believe it does. What happened to plaintiffs is a typical "flash flood." In common parlance, a "flash flood" is "a local flood of great volume and short duration generally resulting from heavy rainfall in the immediate vicinity." (Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 442; see *Scott v. Continental Ins. Co.* (1996) 44 Cal.App.4th 24, 29 ["In seeking to ascertain the ordinary sense of words, courts in insurance cases regularly turn to general dictionaries"].) A flash flood is a type of "flood," as demonstrated by the fact that it is defined in terms of a flood.

Our conclusion is bolstered by the fact that plaintiff Susan Horvath referred to the waters as a "flood" in her deposition. (See *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666-667 ["If the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning"].) Also, when the City of Rancho Santa Margarita yellow-tagged plaintiffs' home, it noted the cause of damage was "flood." In other words, people using the term "flood" in its ordinary sense applied the term to the waters that damaged plaintiffs' home. Plaintiffs' homeowners insurance policy excluded flood damage, and thus State Farm properly denied their claim. Since there were no material disputed facts as to the "flood" exclusion, the trial court properly granted summary judgment. And since plaintiffs' claim was properly denied under the "flood" exclusion, we need not address the "surface water" exclusion.

7

*Plaintiffs Cannot Maintain a Claim of Bad Faith*

Plaintiffs final argument is that State Farm denied their claim in bad faith. However, "'a bad faith claim cannot be maintained unless policy benefits are due . . . .'" (*Waller*, *supra*, 11 Cal.4th at p. 36.) Since no policy benefits were due, plaintiffs' bad faith claim fails.

## DISPOSITION

The judgment is affirmed. State Farm shall recover its costs incurred on appeal.

IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.