Filed 8/19/14  Angelica Textile Services  v.Park CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANGELICA TEXTILE SERVICES, INC., | D063027 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00097967-CU-BT-CTL) |
| JAYE PARK et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Reversed.

Carothers DiSante & Freudenberger, Brent M. Giddens and Dan M. Forman for Plaintiff and Appellant.

Cooley, Seth A. Rafkin, Kraig D. Jennett and Lindsay P. Parker for Defendants and Respondents.

In the trial court, judgment was entered in favor of defendants and respondents Emerald Textiles, LLC (Emerald) and Jaye Park (Park) on plaintiff and appellant

Angelica Textile Services, Inc.'s (Angelica) tort claims and its closely related claims under the Uniform Trade Secrets Act (UTSA). The trial court's judgment was based on its determination that Angelica's tort claims were displaced by UTSA and a later jury verdict finding that Angelica failed to establish the existence of any actionable trade secrets. In addition to finding Angelica had no trade secrets, the trial court determined Angelica prosecuted its trade secrets claim in bad faith and, accordingly, in postjudgment proceedings, awarded Emerald and Park $1.5 million in attorney fees as permitted under UTSA.

In a prior appeal, we reversed the trial court's judgment. We found Angelica's tort claims were not displaced by UTSA and were not otherwise defective as a matter of law. In the prior appeal, Angelica did not challenge the trial court's determination that it had no trade secrets.

In this appeal, we consider Angelica's contention that, in light of our reversal of the underlying judgment, we must also reverse the trial court's attorney fees award. As we explain in greater detail, we agree with Angelica that Emerald is no longer entitled to attorney fees under UTSA and, therefore, the trial court's award of attorney fees must be reversed.

FACTUAL AND PROCEDURAL BACKGROUND

In our prior opinion in this case, *Angelica Textile Services, Inc. v. Park* (2013) 220 Cal.App.4th 495 (*Angelica I*), we fully set forth the factual and procedural background that gave rise to the parties' dispute and its initial resolution by the trial court. We

2

summarize that background here.

Angelica provides linens and laundry services to hospitals and healthcare facilities throughout the United States. It has operated in the San Diego area for many years and, arguably, at all pertinent times, controlled 90 percent of the hospital linen and laundry market in San Diego. Park began working for Angelica in San Diego in 1982 when Angelica purchased his former employer. During the course of his career, Park was eventually promoted to the position of market vice president and was responsible for the operations of Angelica's San Diego and Phoenix laundry plants.

While employed by Angelica, Park signed a noncompetition agreement under which he promised he would not, during his employment, "become interested, directly or indirectly, as a partner, officer, director, stockholder, advisor, employee, independent contractor or in any other form or capacity, in any other business similar to Company's business." Notwithstanding the noncompetition contract he signed, in 2008, while still employed by Angelica, Park engaged in a series of negotiations with representatives of two of Angelica's largest customers in San Diego, Sharp Healthcare (Sharp) and Scripps Health (Scripps). The goal of the negotiations was a proposed linen and laundry enterprise to be jointly operated by Sharp and Scripps. Park prepared a business plan for the joint venture that described both Angelica's role as virtually the only provider of laundry services in the area, its weaknesses and financial projections, including likely production costs and revenues.

Although the two hospitals did not pursue the proposal Park presented, two

3

members of Sharp's board, Tom Gildred and Bob Payne, became very interested in the opportunity to compete in the laundry service business. While still employed by Angelica, Park worked with Gildred and Payne throughout 2009 as the latter two organized a competing laundry business, operating as defendant and respondent Emerald. In 2010, after obtaining financing, Emerald built a state-of-the-art laundry facility. In March 2010, Park resigned from his position at Angelica and shortly thereafter began work as the chief operating officer at Emerald. Emerald thereafter successfully bid for laundry contracts with Sharp and Scripps. After it won the contracts with Sharp and Scripps, Emerald recruited more than 40 of Angelica's former employees.

Following Park's departure, Angelica filed a complaint against Emerald and Park alleging claims for misappropriation of trade secrets, violation of Business and Professions Code section 17200, unfair competition, interference with business relationships, and breach of contract. By way of a second amended complaint, Angelica added causes of action alleging conversion and, as against Park only, a breach of fiduciary duty claim. For its part, Emerald filed a cross-complaint against Angelica that alleged causes of action for intentional interference with prospective economic advantage, intentional interference with contract, and unfair competition.

Emerald and Park moved for summary judgment and summary adjudication. The trial court denied the motion for summary judgment because it found that pending discovery might provide Angelica with information and evidence that would supports its trade secrets claim. However, the trial court granted defendants' motion for summary

4

adjudication on all of Angelica's non-UTSA claims, including its breach of contract claim against Park. The trial court found that all of Angelica's non-UTSA claims were based on Emerald and Park's alleged misappropriation of trade secrets and were therefore displaced by UTSA. Thereafter, at trial, a jury returned a verdict in favor of Emerald and Park on Angelica's trade secrets cause of action. The jury also found that Angelica had interfered with Emerald's contracts with Sharp and Scripps but that Emerald had not suffered any damage. Following the jury's verdict and entry of judgment in Emerald's favor, Angelica filed a notice of appeal from the judgment.

In postjudgment proceedings, which are the subject of the instant appeal, the trial court found Angelica had pursued its trade secrets cause of action in bad faith. In particular, the trial court relied on a statement attributed to Angelica's chief executive officer to the effect that Angelica was pursuing its claims for the purpose of litigating Emerald "'out of business.'" Accordingly, the trial court awarded Emerald and Park $1,580,929.50 in attorney fees as well as their costs, as permitted under UTSA. (Civ. Code, § 3426.4.) Angelica filed a second, separate appeal from the order awarding attorney fees and costs.

In its appeal from the judgment, Angelica did not challenge the jury's verdict on its trade secrets claim. It nonetheless argued that its non-UTSA claims were not displaced by UTSA. We agreed. We found that each of Angelica's non-UTSA claims, and in particular its claims that Park had breached his duty of loyalty to Angelica, had a basis independent of any misappropriation of a trade secret. Accordingly, we reversed the trial

5

court judgment and remanded for further proceedings on Angelica's non-UTSA claims. Our judgment is now final.

In light of our judgment reversing the trial court's judgment on the merits, Angelica argues we must also reverse the order awarding Emerald and Park their costs and attorney fees.

DISCUSSION

I

We review an order granting or denying fees for abuse of discretion. (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 148 (*Graciano*).) "'Because the "experienced trial judge is the best judge of the value of professional services rendered in his court," we will not disturb the trial court's decision unless convinced that it is clearly wrong, meaning that it is an abuse of discretion. [Citations.] However, "'[t]he scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action. . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.'" [Citations.] When the record is unclear whether the trial court's award of attorney fees is consistent with the applicable legal principles, we may reverse the award and remand the case to the trial court for further consideration and amplification of its reasoning.' [Citation.]" (*Id.* at pp. 148-149.)

Importantly, while entitlement to and the amount of an attorney fee award is reviewed for abuse of discretion, interpretation of the term "prevailing party" as it is used

6

in a statute that permits an award of attorney fees is a question of statutory construction, which we review independently. (*Graciano*, *supra*, 144 Cal.App.4th at p. 149; *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1017 (*Castro*); *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)

II

Civil Code section 3426.4 states: "If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees and costs *to the prevailing party*. Recoverable costs hereunder shall include a reasonable sum to cover the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the prevailing party."

On this record, the questions we face here are (1) whether, under the statute, Emerald is still a prevailing party entitled to attorney fees, and, if it is, (2) whether the trial court's determination that Angelica acted in bad faith is still valid.

A. Prevailing Party

Where, as here, the applicable statute does not define the term "prevailing party," we must adopt a pragmatic approach, determining on a practical level which party succeeded in achieving its overall litigation objectives. (*Graciano*, *supra*, 144 Cal.App.4th at p. 150 [interpreting Civ. Code, §§ 1780, subd. (d) & 2983.4]; *Castro*, *supra*, 116 Cal.App.4th at p. 1018 [interpreting Code Civ. Proc., § 405.38]; *Galan v.*

7

*Wolfriver Holding Corp.* (2000) 80 Cal.App.4th 1124, 1127-1128 [interpreting Civ. Code, § 1942.4]; *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1571-1574 [interpreting Civ. Code, § 1354]; *Gilbert v. National Enquirer, Inc.* (1997) 55 Cal.App.4th 1273, 1276-1277 [action for commercial appropriation under Civ. Code, § 3344].)  As Emerald and Park argue, we may not simply mechanically apply the definition of "prevailing party" set forth in the cost statute, Code of Civil Procedure section 1032.  (*Graciano*, at p. 153.)  Rather, in assessing litigation success, "'[c]ourts should respect substance rather than form, and to this extent should be guided by "equitable considerations."  For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective.  [Citations.]'"  (*Castro*, at pp. 1019-1020, quoting *Hsu v. Abbara* (1995) 9 Cal.4th 863, 877.)

At this point, as a pragmatic matter, because the bulk of Angelica's claims, which are closely related to its unsuccessful trade secrets claim, have not yet been finally resolved, neither we nor the trial court are in a position to determine whether Emerald and Park are the prevailing parties: at this point, neither we nor the trial court are able to determine whether Angelica has, on a practical level, realized its litigation aims.

As we interpret Angelica's litigation aims, Angelica would like to be compensated for what it believes was Emerald's and Park's wrongful use of its resources and Park's efforts in establishing a competing enterprise.  Although Angelica's trade secrets claim was plainly a material part of its overall litigation strategy, as we pointed out in *Angelica*

8

*I*, quite apart from its trade secrets claim, Angelica had a number of viable claims based on its allegation that, while still employed at Angelica, Park violated his duty of loyalty to Angelica: "In particular, we note that as an officer of Angelica, Park owed the corporation a fairly broad duty of loyalty: '"Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders. A public policy, existing throughout the years, derived from a profound knowledge of human characteristics and motives, has established a rule that demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers."' [Citation.]" (*Angelica I*, *supra,* 220 Cal.App.4th at p. 509.) At the very least, until the trial court determines whether Park breached his duty of loyalty to Angelica, and, if he did, whether he and Emerald must compensate Angelica, there is no realistic, let alone practical, method of determining whether Angelica has achieved its litigation aims.

We reject Emerald and Park's contention we should determine their rights to attorney fees solely by reference to their success in defeating Angelica's trade secrets claim. Although under Civil Code section 1717, subdivision (a), when a contract

provides for attorney fees for claims on the contract, such a narrow, claim-based determination of who is a prevailing party is required, when, as here, attorney fees are provided by statute, and the statute does not provide such a limitation on the definition of prevailing party, we should look at all the claims made in the case and determine, looking at the litigation in its entirety, which if any party prevailed in the action. In this regard, the reasoning and holding in *Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 992-994 (*Maynard*) is helpful.

In *Maynard*, the parties entered into a listing agreement with respect to the sale of the plaintiff's business and, after the defendant failed to obtain appropriate security for the purchase price and the eventual buyer went into bankruptcy leaving a portion of the sale price unpaid, the plaintiff sued the defendant for both breach of contract and negligence. Although the plaintiff's breach of contract theories were rejected by the trial court, she prevailed on her negligence theory and recovered a judgment for $24,000. In posttrial proceedings, the trial court awarded the plaintiff her attorney fees under an attorney fees provision, which provided them to "[t]he prevailing party in the event of arbitration or litigation" without any limitation to contract causes of action. (*Maynard*, *supra*, 216 Cal.App.4th at pp. 989, 993.) On appeal, the defendant argued it should have been awarded its fees because it prevailed on plaintiff's breach of contract claims. Because of the breadth of the attorney fees agreement, the trial court found the right to attorney fees was not governed by Civil Code section 1717 and, hence, not limited to the plaintiff's contract claims. (*Maynard*, at pp. 993-994.) Rather, the court found that the

10

"plaintiff was the prevailing party since she obtained a net recovery in the action, albeit under a negligence rather than a breach of contract cause of action.  This construction comports with the 'ordinary or popular sense' of the term 'prevailing party,' since plaintiff recovered from [the defendant] the balance of the purchase price of her business, which was the sole objective of her lawsuit, regardless of the theory on which she prevailed.  [Citation.]  [The defendant] may have won a battle, but plaintiff won the war and is the prevailing party . . . within 'the meaning a layperson would ascribe' to 'prevailing party.'  [Citation.]  Since the controlling attorney fee clause entitles the prevailing party in litigation concerning 'any dispute' to recover its attorney fees, the trial court properly awarded plaintiff her attorney fees and denied [the defendant] its fees."  (*Id.* at p. 994.)

Similar to the agreement in *Maynard*, Civil Code section 3426.4 does not define prevailing party in terms of success made on UTSA claims and instead refers to costs incurred in "preparation . . . of the *case* by the prevailing party."  (Italics added.)  This language suggests to us that although successful litigation of a trade secrets claim is a prerequisite to obtaining a fee award, as in *Maynard*, determination of who was the prevailing party in the "case" requires that the trial court consider from a practical perspective which party, if either, was successful in achieving its litigation goals, after considering how all the parties' respective claims, including its non-UTSA claims, were resolved.  As Angelica points out, it would be entirely inequitable if, because it asserted an unsuccessful trade secrets claim, Angelica was effectively deprived of any compensation on what may prove to be a successful and closely related claim growing of

11

Park's allegedly disloyal and unlawful conduct.

Contrary to Emerald and Park's argument on appeal, nothing we said in *Graciano*, *supra*, prevents a court from looking at the overall result achieved in litigation in determining whether a party was the prevailing party for purposes of awarding statutory attorney fees. In *Graciano*, the jury returned a partial verdict awarding the plaintiff $11,191.40 on her cause of action for violation of the Automobile Sales Finance Act, Civil Code section 2981 et seq., and finding the defendant had acted with malice, oppression and fraud. Following return of the partial verdict, and before the jury fixed an amount of punitive damages, the defendant agreed to pay the plaintiff $45,000 in exchange for dismissal of her remaining claims. The trial court awarded the plaintiff only a small portion of the attorney fees the plaintiff requested on the grounds that the defendant had prevailed on the dismissed causes of action, including ones for which attorney fees were not available. We found multiple flaws in the trial court's analysis, including, in particular, its apparent determination that under Code of Civil Procedure section 1032 the defendant was the prevailing party on the dismissed causes of action and its conclusion this result somehow justified a substantial reduction in the award of attorney fees. (*Graciano*, *supra*, 144 Cal.App.4th at pp. 152-153.) We stated: "The relevant inquiry, however, was simply whether as a practical matter [the plaintiff] was the prevailing party with respect to her [statutory] causes of action." (*Id.* at p. 152.) In reaching this conclusion, we did not, as Emerald and Park contend, prevent a trial court from considering the overall result of litigation, including the practical impact of success

on nonstatutory claims; rather, we merely held the trial court erred in *Graciano* in focusing on the defendant's technical success on the dismissed claims and its finding that the technical success somehow was equivalent to the plaintiff's very real success, as a practical matter, on her statutory claims.[1]

In sum then, because Angelica's closely related non-UTSA claims are now pending in the trial court, it is not possible to make any practical assessment of which party achieved its litigation goals. Thus, it is not possible to determine that Emerald and Park were the prevailing parties in the case within the meaning of Civil Code section 3426.4.

B. Bad Faith

On this record, even if we limit our consideration to Emerald and Park's success on Angelica's trade secrets claim, we must reverse the order awarding attorney fees. By its terms, fees are available under Civil Code section 3426.4 when a litigant either prosecutes or defends a trade secrets claim "in bad faith." "Bad faith" under Civil Code section 3426.4 requires "objective speciousness of the plaintiff's claims and its subjective misconduct in bringing or maintaining a claim for misappropriation of trade secrets."

---

[1]    Contrary to Emerald and Park's contention, the federal district court's order in *Computer Economics, Inc. v. Gartner Group, Inc.* (S.D.Cal. 1999) 50 F.Supp.2d 980 does not provide any authority or rationale for interpreting Civil Code section 3246.4 in the narrow manner Emerald and Park suggest. In *Computer Economics*, the court determined that the defendant had prevailed on the plaintiff's single contract claim; although the court also found that the plaintiff's trade secrets claim had been asserted in bad faith, the court made no determination with respect to whether as a practical matter the defendant had achieved its litigation objectives. Because *Computer Economics* did not discuss or consider the issue presented here, to wit, which party, as a practical matter, succeeded in achieving its litigation goals, it is not helpful here.

(*Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249, 1262-1263; see *FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1275.) Speciousness is not as high a standard as frivolousness under Code of Civil Procedure section 128.5, but nonetheless the litigant's conduct must be more than mere negligence. (*Gemini Aluminum Corp. v. California Custom Shapes, Inc.*, *supra*, at p. 1261.) The litigant's "'conduct must be at least reckless or grossly negligent, if not intentional and willful.'" (*Ibid*.) With respect to the subjective element of bad faith, there must be proof that the "'action or tactic is being pursued for an improper motive.'" (*Id*. at p. 1263.)

Although the fact Angelica's trade secrets claim survived Emerald and Park's motion for summary judgment would tend to suggest there was some factual basis for it, the jury's rejection of the claim and statements from Angelica officials to the effect that at the time the action was initiated it had not yet identified any misappropriated trade secrets may be sufficient to support a finding of objective speciousness. (See *FLIR Systems, Inc. v. Parrish*, *supra*, 174 Cal.App.4th at p. 1277.) The difficulty at this point is with the element of subjective bad faith. As we have indicated, in finding subjective bad faith the trial court relied on statements attributed to Angelica's former CEO to the effect that Angelica would litigate Emerald out of business. Considered in the light of a sole unsuccessful trade secrets claim, this statement would plainly support a finding of subjective bad faith. However, at this point, in addition to the unsuccessful trade secrets claim, Angelica's potentially meritorious breach of loyalty and related claims are unresolved. In the event Angelica prevails on those claims, a finding that it had an

14

improper purpose in pursuing those valid claims would be something of a non sequitur. While it is no doubt improper to pursue invalid claims for the purpose of injuring an opponent, we are aware of no case which subjects a litigant to an award of attorney fees or other sanction for merely pursuing what turns out to be valid claims. Thus, success on the pending claims may cast Angelica's former CEO's alleged statements in a far different light; one that does not warrant an award of attorney fees. Given these circumstances, the award of attorney fees cannot be sustained.

## DISPOSITION

The order awarding Emerald and Park their attorney fees and costs is reversed without prejudice to their right to pursue them in the trial court following resolution of Angelica's remaining claims.

Each party to bear its own costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

McINTYRE, J.

15